**William GROSS et al.**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued June 5, 1989.
Decided July 21, 1989.

Harold L. Lichten (orally), Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, Mass., for plaintiffs.

James E. Tierney, Atty. Gen., Paul Stern (orally), Asst. Atty. Gen., Augusta, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

Plaintiffs William Gross, Arthur Stanley Moore, William Mastin, George Normand, George Grass, and Mary Hanscom appeal from a judgment of the Superior Court (Kennebec County; *Brody, C.J.*) granting the defendant Secretary of State's motion to dismiss all counts of the plaintiffs' complaint and denying the plaintiffs' motion to amend their complaint. We affirm in part and vacate in part the judgment of the Superior Court.

The plaintiffs have visual impairments that allegedly require the use of regular carrier eyeglass lenses and bioptic lenses [1] for their operation of motor vehicles. The plaintiffs had unrestricted motor vehicle licenses until 1986 when the Secretary of State promulgated regulations that restricted users of bioptic lenses to daytime driving within a defined geographical area. In July of 1988, the Department of Motor Vehicles (DMV) informed the plaintiffs by letters that, pursuant to the 1986 regulations, they must turn in their unrestricted licenses by August 20, 1988 and receive their restricted licenses. Several plaintiffs requested that the DMV hold individual administrative hearings. The DMV denied their requests. On August 22, 1988, the plaintiffs jointly filed, *inter alia,* a complaint seeking a declaratory judgment that the 1986 regulations were illegal and the issuance of preliminary and permanent injunctions to enjoin the enforcement of the 1986 regulations.

1. Bioptic lenses are telescopic lenses mounted onto regular carrier lenses.

On August 23, 1988 the Secretary of State held a hearing on proposed new regulations on the issuance of motor vehicle licenses for bioptic lens users. After the hearing, the regulations were adopted and became effective on September 11, 1988. The 1988 regulations repeal the prior 1986 regulations. The 1988 regulations, *inter alia*, prohibit the use of bioptic lenses during a driver's visual and driving tests, maintain the 1986 geographical and daylight restrictions, and set forth a procedure for individualized assessment of restricted drivers which can lead to modification of the restrictions. Restrictions may be reduced (or enlarged) on the basis of a recommendation from an optometrist or ophthalmologist advising the DMV that the applicant's vision is adequate to permit safe driving without the use of bioptic lenses, a supervisory driver's examination that demonstrates the applicant's ability to drive safely without the use of bioptic lenses, and a review of the applicant's driving record that demonstrates the applicant's ability to operate a vehicle safely and in accordance with all applicable laws. The plaintiffs were informed by letters dated September 9, 1988 of the changes to the regulations, the availability of an individualized review process, and that their license restrictions were pursuant to the 1988 regulations.

On September 8, 1988 the Secretary of State filed, *inter alia*, a motion to dismiss the plaintiffs' complaint, arguing that the plaintiffs' complaint was moot since the 1986 regulations had been repealed and replaced by the 1988 regulations. In response, the plaintiffs moved to amend their complaint to include a request for review of the Secretary of State's actions pursuant to the Maine Administrative Procedure Act (APA), 5 M.R.S.A. § 8058 (1989), on the alleged grounds that the 1988 regulations violate the Code of Fair Practices and Affirmative Action, 5 M.R.S.A. §§ 781–791 (1989), and that the 1988 regulations were adopted by a process inconsistent with that required by 29 M.R.S.A. § 547 (Supp.1988). The plaintiffs also claimed that the 1988 regulations violate section 504 of the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794 (Supp.V 1987). The plaintiffs requested injunctive relief from the 1988 regulations, a declaratory judgment that the 1988 regulations were void, and attorneys fees and costs.

The Superior Court, after a hearing, granted the Secretary of State's motion to dismiss all of the counts of the plaintiffs' complaint, reasoning that the claims were moot because the 1986 regulations were repealed and replaced by the 1988 regulations. The court also denied the plaintiffs' motion to amend their complaint with claims challenging the 1988 regulations on the basis that the plaintiffs had failed to exhaust their administrative remedies. The plaintiffs appeal from the court's judgment.

■ The plaintiffs first argue that the trial court erred in dismissing their claims attacking the 1986 regulations. Since September 1988, the present restrictions on the plaintiffs' licenses have been pursuant to the 1988 regulations. We have stated that "it is a well-settled principle that legislation passed during the course of litigation may render moot, or unnecessary, a determination of the existing controversy by supplanting the gravamen of the complaint." *Singal v. City of Bangor*, 440 A.2d 1048, 1053 (Me.1982). The plaintiffs' challenges of the 1986 regulations and their request for equitable relief are no longer live issues and thus the court correctly held that the original complaint was moot. *See Berry v. Daigle*, 322 A.2d 320, 326 (Me.1974) ("Absent the right to a refund, a declaration as to the constitutionality of a repealed tax statute would involve a moot issue.").

■ The plaintiffs next argue that the Superior Court erred in relying on the doctrine of the exhaustion of administrative remedies in denying their motion to amend their complaint to include claims attacking the 1988 regulations. The plaintiffs in their amended complaint first seek review through the provision of the APA for a judicial review of the rules, *see* 5 M.R.S.A. § 8058 (1989). They allege that the 1988 regulations were adopted by a process inconsistent with that required by 29 M.R.

S.A. § 547 (Supp.1988) [2] because the Secretary of State failed to obtain advice from the Medical Advisory Board prior to the promulgation of the rules and that the adoption and enforcement of the regulations are in violation of the Code of Fair Practices and Affirmative Action.[3] *See* 5 M.R.S.A. §§ 781–791 (1989). The allegation in a complaint that administrative rules violate the Code of Fair Practices and Affirmative Action is subject to judicial review pursuant to section 8058. *See Jackson v. State*, 544 A.2d 291, 295 n. 5 (Me.1988).

Section 8058 states in relevant part:

**1. Judicial review.** Judicial review of an agency rule ... may be had by any person who is aggrieved in an action for declaratory judgment in the Superior Court conducted pursuant to Title 14, section 5951, et seq., which provisions shall apply to such actions wherever not inconsistent with this section. Insofar as the court finds that a rule exceeds the rule-making authority of the agency ... it shall declare the rule invalid. In reviewing any other procedural error alleged the court may invalidate the rule only if it finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred. If the court finds that the rule is not procedurally invalid and not in excess of the agency's rule-making authority, its substantive review of that rule shall be to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The phrase "otherwise not in accordance with law" shall apply only to the review authorized in the preceding sentence....

**2. Failure to seek judicial review.** The failure to seek judicial review of an agency rule in the manner provided by subsection 1 shall not preclude judicial review thereof in any civil or criminal proceeding.

The regulations at issue here are within the APA's definition of the term "rule." *See* 5 M.R.S.A. § 8002(9) (1989) (term "rule" means any regulation or standard "that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency"). The plaintiffs have been aggrieved by the 1988 regulations since their licenses are now restricted pursuant to those regulations. *Cf. Hammond Lumber Co. v. Finance Authority*, 521 A.2d 283, 286 (Me.1987) (person is aggrieved within meaning of 5 M.R.S.A. § 11001 if he has suffered a particularized injury, i.e., agency action operating directly and prejudicially on party's personal rights). Thus, the plaintiffs can bring their substantive claims under section 8058 unless there is a requirement of exhaustion of administrative remedies.

Section 8058 contains no express exhaustion requirement. We have never held that section 8058 has such a requirement, and we have in fact suggested otherwise. *See Fisher v. Dame*, 433 A.2d 366, 372 & n. 8 (Me.1981) (although provision for adequate administrative review of decision of administrative body is generally viewed as exclusive, "it would appear that a 'rule,' as defined in 5 M.R.S.A. § 8002(9), is generally open to collateral attack" under section 8058(2)); *Cumberland Farms Northern, Inc. v. Maine Milk Comm'n*, 428 A.2d 869, 873 (Me.1981) (discussion of standards of review under section 8058, the provision of the APA addressing judicial review of rules and rulemaking process, and under section

**2.** 29 M.R.S.A. § 547(2)(A) (Supp.1988) states that the Medical Advisory Board "shall advise the Secretary of State on written medical and vision standards relating to the licensing of drivers under this Title."

**3.** 5 M.R.S.A. § 784(1) (1989) states that "No agency ... of the State or state related agencies will discriminate because of ... physical handi-

cap ... while providing any function or service to the public in enforcing any regulation...." The plaintiffs' amended complaint alleging that in adopting and enforcing the 1988 regulations the defendant has discriminated against the plaintiffs solely on account of their physical handicaps, irrespective of their demonstrated abilities, states a claim within section 784.

1107, the provision for judicial review of "final agency action").

 Section 8058 claims are attacks directed toward the administrative rules, not challenges to the decisions of an agency. Both the clear language of the statute and the case law support our conclusion that the plaintiffs do not need to exhaust their administrative remedies before bringing their claims under section 8058. Accordingly, the court erred in denying the plaintiff's motion to amend their complaint to include the section 8058 claims.[4]

 In the last count of the plaintiffs' amended complaint, they allege that the Secretary of State violated section 504 of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794 (Supp.V 1987),[5] by restricting the plaintiffs to a review process for the modification of the restrictions placed on their licenses that does not permit them to use their bioptic lenses and by adopting and enforcing regulations that discriminate against the plaintiffs solely on the basis of their physical handicaps, irrespective of their abilities. The plaintiffs argue on appeal that the doctrine of exhaustion of administrative remedies does not apply to claims based on violations of section 504.

There is no exhaustion requirement in the Act itself or the regulations promulgated under the statute. Several United States Courts of Appeal, relying on *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), a case in which the United States Supreme Court rejected the need to exhaust administrative remedies under a similar statute, have held that plaintiffs need not exhaust their federal administrative remedies before bringing private actions under section 504, reasoning that the federal administrative remedy does not afford the plaintiffs adequate relief. *See Pushkin v. Regents of University of Colorado*, 658 F.2d 1372, 1380–82 (10th Cir.1981); *Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir.1980); *Camenisch v. University of Texas*, 616 F.2d 127, 132 (5th Cir.1980), *vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Sanders v. Marquette Public Schools*, 561 F.Supp. 1361, 1369 (W.D.Mich.1983). The same rationale has been applied by courts in determining whether state administrative remedies need to be exhausted by a plaintiff before bringing a section 504 claim. *See New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847, 850–51 (10th Cir.1982); *see also Shuttleworth v. Broward County*, 639 F.Supp. 654, 657–58 (S.D.Fla.1986); *Turillo v. Tyson*, 535 F.Supp. 577, 585 (D.R.I.1982); A. Larson & L. Larson, 3A *Employment Discrimination* § 106.53(a) (1988).

---

**4.** The Secretary of State moves to dismiss this appeal as to William Gross and Mary Hanscom, arguing that their claims are moot because plaintiffs Gross and Hanscom have pursued the administrative review process established by the 1988 regulations to remove restrictions on their licenses and have not appealed from the decisions of the DMV. We deny the motion. Plaintiffs Gross and Hanscom still have restrictions on their licenses by reason of the 1988 regulations. Their section 8058 claims attacking the validity of those regulations are a separate action and cannot be said to be mooted by their initiation of individualized administrative reviews under the 1988 regulations after the Superior Court's judgment in this case. *See Cote v. Zoning Board of Appeals*, 398 A.2d 419, 420 (Me.1979).

The Secretary of State further moves to dismiss as moot the plaintiffs' claim of a violation of 29 M.R.S.A. § 547 because the Medical Advisory Board met and approved the 1988 regulations on November 15, 1988. The approval occurred over two months after the rules became effective on September 11, 1988 and approximately two weeks after the Superior Court's decision dated October 27, 1988. We deny the Secretary of State's motion to dismiss. The record reflects that the plaintiffs have not had the opportunity to engage in discovery regarding the approval of the regulations by the Medical Advisory Board. The trial court is the proper forum to determine, in the first instance, after both discovery and proper motions are made and heard, whether the statute requires the advice or approval of the Medical Advisory Board for valid rulemaking and, if it does, whether approval of the regulations after their effective date is sufficient.

**5.** Section 504 states that "[n]o otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under ... any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (Supp.V 1987).

We find the reasoning of the federal courts persuasive on the facts of this case. Because the remedy provided in the DMV regulations is inadequate to address the plaintiffs' claims, the exhaustion of the administrative remedy is not required before plaintiffs can maintain an action under section 504. There is no provision within the administrative review process for the plaintiffs to challenge the prohibition against the use of bioptic lenses in the visual and driving tests; the review procedure requires the plaintiffs to submit to the driving and visual tests without the use of bioptic lenses. Further, the remedy provided by the review procedure only authorizes DMV to reduce or modify the geographical and daylight restrictions and not eliminate them as requested by the plaintiffs in their amended complaint. Thus, the DMV review procedure is inadequate in that it does not provide relief commensurate with the plaintiffs' section 504 claims and therefore the exhaustion doctrine is inapplicable. *See* 4 K. Davis, *Administrative Law Treatise* § 26:11 (1983). The court erred in denying the plaintiffs' motion to amend their complaint pursuant to M.R.Civ.P. 15.[6]

The entry is:

Affirm the judgment dismissing plaintiffs' original complaint. Remanded to the Superior Court with instructions to vacate the order denying plaintiffs' motion to file an amended complaint and enter its order granting the motion and for further proceedings consistent with the opinion herein.

All concurring.

---

6. Although amendment was not a matter of right since 20 days elapsed after the filing of the original complaint, leave to amend should have been granted because "justice so requires." M.R.Civ.P. 15(a). The challenges to the new regulations did not arise until the regulations became effective on September 11, 1988, and the plaintiffs promptly filed on October 7, 1988 their motion to amend their original complaint. *See* M.R.Civ.P. 15(d).