STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 27 2018
3:43 PM
RECEIVED

THOMAS J. YARCHESKI,
as Representative of B.K.Y.

Petitioner/Appellant


v.                    Docket Nos. PORSC-AP-17-050, -AP-17-051, -AP-18-003

DEPARTMENT OF HEALTH & HUMAN SERVICES,

Respondent/Appellee

DECISION

These three consolidated appeals from administrative agency actions are before the court for decision.

In addition, Petitioner's Motion to Sanction Respondent's Attorney and Respondent's Motion to Dismiss are before the court.

The court elects to decide these appeals and the pending motions without oral argument. *See* M.R. Civ. P. 7(b)(7), 80C(l) (oral argument to be scheduled "[u]nless the court otherwise directs." *See also Lindemann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶26, 961 A.2d 538 (Rule 80C permits court to direct that oral argument not be scheduled).

1

## Background

*1. B.K.Y.'s MaineCare Services*

Petitioner Thomas Yarcheski is the husband of B.K.Y.[1] B.K.Y. is the recipient of home health services under the State of Maine's MaineCare program.

The MaineCare program is the state component of the joint state-federal program known as Medicaid, codified as Title XIX of the Social Security Act. *See* 42 U.S.C. §§ 1396-1396v (2017); 42 C.F.R. § 430.0 (2017). *See also Biewald v. State,* 451 A.2d 98, 99 (Me. 1982). The MaineCare program is administered by the Respondent in these appeals, the Maine Department of Health and Human Services (DHHS). DHHS has promulgated a set of regulations known as the MaineCare Benefits Manual and codified at 10-144 Code of Maine Regulations chapter 101. *See https://www.maine.gov/sos/cec/rules/10/ch101.htm*

B.K.Y. receives services under the DHHS Section 19 program, which offers services in the home and community for elderly and disabled adults. *See* 10-144 C.M.R. ch. 101(II), § 19.01 *et seq.* Services rendered to a Section 19 recipient are coordinated by a "service coordination agency" (SCA) that assesses the recipient's needs and develops a plan for in-home services by direct care providers. In B.K.Y.'s case, the SCAs have been Elder Independence of Maine (EIM) and AlphaOne.

Recipients of Section 19 home services can elect to have an agency arrange for and manage the direct care providers who come to the home, or can elect the

---

[1] The MaineCare recipient's name is redacted in this Decision to protect confidentiality.

2

Participant-Directed Option and arrange for and manage providers on their own.

B.K.Y. elected the Participant-Directed Option. The regulations define the participant-directed option as "a choice offered to members to manage their Attendant Services. Specifically, the member hires, discharges, trains, schedules and supervises the Attendant(s) providing services. A member who chooses to engage in the Participant-Directed Option is considered the employer of his or her Attendant(s)." 10 C.M.R. ch. 101(II), § 19.01-23.

A MaineCare recipient of Section 19 services who has elected the Participant-Directed Option may designate a "representative" to manage the recipient's care. The MaineCare Benefits Manual defines a "representative" as "an individual responsible for managing Attendant Services on behalf of a member using the Participant-Directed Option."

Petitioner Thomas Yarcheski is the representative of B.K.Y. for Section 19 purposes.

In addition to home health care services and support, B.K.Y. utilizes what the MaineCare Benefit Manual calls a "fiscal intermediary" to handle payment to direct care providers and related financial services. The MaineCare Benefits Manual defines a "fiscal intermediary" as follows:

> Fiscal Intermediary is a provider of Financial Management Services on behalf of members utilizing Attendants through the Participant-Directed Option. The Fiscal Intermediary's responsibilities include, but are not limited to, preparing payroll and withholding taxes, making payments for Attendant services and ensuring compliance with State and Federal tax and labor regulations and the requirements under this Section. The Fiscal Intermediary acts as an agent of the employer (i.e., the member or

3

the member's Representative) in accordance with Federal Internal Revenue Service codes and procedures.

10-144 C.M.R. ch. 101(II), § 19.01-14.

At all relevant times, the fiscal intermediary for B.K.Y.'s Section 19 services has been an agency called GT Independence (GTI).

*2. The Circumstances Giving Rise to These Appeals*

All three of these appeals arise out of actions taken by B.K.Y.'s service care agencies—EIM and AlphaOne—and fiscal intermediary, GTI.

In February 2017, EIM notified B.K.Y. that it was no longer willing to serve as her SCA because of Petitioner Thomas Yarcheski's harassing and threatening behavior. Petitioner, as representative of B.K.Y., appealed EIM's termination of its SCA status to DHHS, and a hearing officer upheld EIM's action. Petitioner appealed the hearing officer's decision in the case docketed as AP-17-051.

The AlphaOne agency took over as B.K.Y.'s SCA in March 2017. In May 2017, she went into the hospital. For obvious reasons, the MaineCare Benefit Manual requires that Section 19 in-home services be suspended when a recipient leaves home and enters a hospital. *See* 10-144 C.M.R. ch. 101(II), §§ 19.03-1(J). AlphaOne suspended B.K.Y's Section 19 services when it learned she was in the hospital and reinstated them when she was discharged. Petitioner appealed this action to DHHS and AlphaOne's actions were upheld by a hearing officer. He appealed that decision in the case docketed as AP-17-50.

Petitioner's third appeal resulted from the refusal of GTI, the fiscal

intermediary, to pay for services rendered by a home health aide. Petitioner appealed the refusal to DHHS, and a hearing officer upheld GTI's action as justified because Petitioner had failed to furnish GTI with information necessary for the payment to be approved. Petitioner took a Rule 80C appeal in the case docketed as AP-18-03. According to an affidavit filed by a DHHS representative, GTI has since obtained the necessary information and has made payment retroactively for the services.

Because all three cases involved the same Section 19 benefit recipient, the court consolidated the three appeals over the Petitioner's objection.

## Analysis

Although the parties have briefed the substantive issues, DHHS's brief raises the threshold issue of standing in its opposition to Petitioner's appeals.

*1. The Petitioner's Lack of Standing*

DHHS asserts that Petitioner's status as representative of B.K.Y. for Section 19 purposes does not give him standing to take an appeal from actions affecting her Section 19 benefits. The court agrees.

The Maine Administrative Procedure Act that, along with M.R. Civ. P. 80C, governs appeals from adjudicative decisions of state agencies limits the right of appeal to persons "aggrieved by final agency action." 5 M.R.S. § 11001(1). A person is aggrieved "if he has suffered a particularized injury, i.e., agency action operating directly and prejudicially on a party's personal rights." *Gross v. Secretary of State*, 562 A.2d 667, 670 (Me. 1989) (*citing Hammond Lumber Co. v. Finance Authority*, 521 A.2d 283, 286 (Me. 1987)).

5

Because only B.K.Y. is the recipient of Section 19 benefits, only she can take an appeal from actions affecting her benefits. Although Petitioner asserts that she is disabled and cannot represent herself, those facts, assuming they are true, do not confer standing upon him. There is nothing in the applicable statutes and regulations that authorizes a Section 19 representative to sue in their own name on behalf of the MaineCare recipient.

Ironically, noted in this court's February 21, 2018 Order, when the parties were addressing the question whether these appeals should be consolidated, DHHS suggested that B.K.Y. be substituted as the named petitioner, but the Petitioner objected and the substitution was never made.[2]

A plaintiff or petitioner's lack of standing affects justiciability of the action and hence the court's authority to address the merits. *See Homeward Residential, Inc. v. Gregor,* 2015 ME 108, ¶¶ 16-19, 122 A.3d 947. The claims of a plaintiff or petitioner who lacks standing to assert the claims must be dismissed as non-justiciable. *See Madore v. Me. Land Use Regulation Comm'n,* 1998 ME 178, P8, 715 A.2d 157.

2. *The Merits*

To facilitate appellate review, in case it is requested, this Decision will briefly address the court's view of the merits. Were the court to reach the merits of these

---

[2] Petitioner's objection appears to have been based on his view that B.K.Y. is not competent to represent herself. The civil rules permit the court to address such situations. *See* M.R. Civ. P. 17(b).

appeals, it would conclude that the appeals should be denied because the decisions appealed from are supported by substantial evidence in the record.

In administrative appeals taken pursuant to Rule 80C and the Maine Administrative Procedure Act, the court reviews the decision of the state agency to determine if its findings or conclusions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by bias or error of law; (5) unsupported by substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion. *See* 5 M.R.S. § 11007(4)(C).

An administrative agency's findings of fact must be supported by substantial evidence in the record, but the reviewing court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Sinclair Builders, Inc. v. Maine Unemployment Insurance Commission*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (quotation omitted). The fact that the record contains inconsistent evidence or the fact that inconsistent conclusions could be drawn from the record do not prevent the agency's findings from being supported by substantial evidence. *See In re Me. Clean Fuels, Inc.*, 310 A.2d 736, 741 (Me. 1973).

The record on appeal compels the conclusion that Petitioner's own behavior was the trigger for at least one of the actions he complains of—EIM's termination of its SCA relationship with B.K.Y.—and his failure or refusal to follow payment procedure was the trigger for another—GTI's initial refusal to make payment to Ms.

Cash without the proper forms. The third action—AlphaOne's suspension of benefits during B.K.Y.'s in-patient hospitalization—was justified under the applicable law.

The record reveals no bias on the part of the hearing officer, and no other ground for vacating the actions and decisions appealed from.

For these reasons, were the merits reached, Petitioner's appeals would be denied.

### 3. *The Pending Motions*

Petitioner's Motion to Sanction Respondent's Attorney is frivolous and is denied without further discussion.

Respondent's Motion to Dismiss seeks, not only the dismissal of these appeals, but also an order barring Petitioner Thomas Yarcheski from filing further actions or motions without prior leave of court. The Respondent's request is based on the tone and substance of Petitioner's filings in these cases.

It is true that Petitioner's filings throughout the course of these cases have featured what can aptly be described as a series of accusatory rantings, and also true that Petitioner has filed unfounded motions to recuse and for sanctions.[3] However,

---

[3] Petitioner's various filings and motions level accusations at nearly every other person and entity involved in these cases--the SCAs and their staff, the fiscal intermediary and its staff, DHHS staff, the DHHS hearing officer and chief administrative hearing officer, the Office of the Attorney General, and the court. The accusations charge "lies," "deceit," "illegality," "misconduct," "fraud," "willful blindness," "fabrication of evidence," "bad faith," "bias," "malice," "coverup" and more. None of these accusations is substantiated in the record. Petitioner's intemperate rhetoric in these cases is ultimately self-defeating and actually disserves the interests of B.K.Y., for whom Petitioner is supposedly trying to advocate, because it detracts from the credibility of his presentation on her behalf and tends to obscure what merit his arguments have.

the court is not persuaded, based on the present record, that the requested sanction is called for. The Respondent's Motion to Dismiss will itself be dismissed as moot in light of the court's dismissal of the cases for lack of standing.

### Conclusion

The appeals in these consolidated cases are hereby dismissed for lack of standing. Petitioner's Motion to Sanction Respondent's Attorney is denied. Respondent's Motion to Dismiss is dismissed as moot.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision by reference in the docket.

Dated June 27, 2018

_____
A. M. Horton, Justice