**Jane CUSHING, et al.[1]**

v.

**Albert S. SMITH III, et al.[2]**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1983.

Decided March 10, 1983.

between 9:30 a.m. and 2:50 p.m. on the day of the search.

1. Plaintiffs are fourteen individuals, who are residents of the City of Bangor and reside or own real estate in a Residential 5 Zone as defined by the Bangor Zoning Ordinance.

2. Defendants are Albert S. Smith III (Zoning and Code Administration Officer of the City of Bangor), Citizens Interest Group and Marjorie J. Hill (individually and as acting secretary of Citizens Interest Group). The City of Bangor has been deleted as an appellee in the caption of this case. In the *Inhabitants of the Town of*

817

*Boothbay Harbor v. Russell,* 410 A.2d 554, 559 (Me.1980), we said that the proper parties defendant in a case such as this are either the municipal officers or the enforcing officer. We have consistently deleted towns as named defendants where the enforcing officer has been made a party. *See Thornton v. Lothridge,* 447 A.2d 473, 474 n. 1 (Me.1982).

Twitchell, Linscott & Badger, Orman G. Twitchell (orally), Bangor, for plaintiff.

Edward Klein, Portland, for Albert Doten, amicus curiae.

Rudman & Winchell, George F. Terry, IV (orally), Bangor, for Citizens Interest Group.

Robert E. Miller, Bangor, for City of Bangor & Albert Smith.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

In August of 1981, Citizens Interest Group (hereafter CIG) entered into a purchase and sale agreement for property located at 3 Hudson Street in Bangor. CIG is a non-profit organization consisting of persons interested in mental health and some of the deficiencies in the mental health program in the Bangor area. It intends to establish a group home for the recovering mentally ill at that property. The facility would provide a transitional living arrangement for individuals discharged from the Bangor Mental Health Institute to assist them in becoming working members of the community and to help avoid their return to the Bangor Mental Health Institute.

The property is located in a Residential 5 Zone. A Residential 5 Zone, as defined by the Bangor Zoning Ordinance, Bangor, Me., Ordinances Ch. 8, Art. 10, § 3 (1982), does not expressly permit group homes. Nevertheless, the proposed use potentially qualifies as a "boarding home", Bangor, Me., Ordinances Ch. 8, Art. 3, § 2 (1982), which is a permitted use in a Residential 5 Zone, "but only upon the granting of a special exception permit by the Planning Board . . . ." Bangor, Me., Ordinances Ch. 8, Art. 10, § 3(2)(a) (1982). In addition to needing a special exception permit, CIG faced another problem because the property could be used only as a single or two family residence unless they were granted a variance from certain site development deficiencies. Since the proposed use did not qualify as a single or two family residence, CIG was also required to seek a variance before establishing a group home at 3 Hudson Street.

Initially, on August 19, 1981, CIG applied for a certificate of occupancy pursuant to Article 23, section 3A of the Bangor Zoning Ordinance[3] to use the property located at 3 Hudson Street as a boarding home. The Code Enforcement Officer examined the application for technical compliance with the ordinance and, on August 27, 1981, he denied CIG's application based on the following site deficiencies:

(1) the parking requirement is six (6) spaces where no spaces are proposed . . . (2) the lot area requirement is 6,600 square feet where 6,020 square feet exist . . . (3) the side yard requirement is ten feet (10′) where three feet exist . . . (4) the set back of the structure from Ohio and Hudson Street is ten feet (10′) and five feet (5′) respectively, where fifteen feet are required . . . .

CIG appealed to the Bangor Zoning Board of Appeals, seeking a variance. On September 16, 1981, after a hearing, the Zoning Board of Appeals granted a vari-

---

**3.** Art. 23, section 3A provides in part:

No land shall be occupied or used . . . until a certificate of occupancy shall have been issued by the Code Enforcement Officer, stating that . . . the proposed use thereof complies with the provisions of this Ordinance.

ance from all five site development deficiencies. The Zoning Board also granted an administrative appeal for three of the site requirements.[4] The variance, however, was granted subject to the following conditions:

(1) That the variance be limited to the use of the premises as a boarding home, (2) that the residents of the facility not have motor vehicles on or about the premises, and (3) that four (4) off-street parking spaces be provided on the site for the use of staff and visitors.

The plaintiffs, Jane Cushing *et al.*, subsequently filed a complaint in the Superior Court, Penobscot County, pursuant to M.R. Civ.P. 80B, requesting that the Superior Court reverse the decision of the Zoning Board of Appeals. (Hereafter this action will be referred to as CV–81–554).

On September 22, 1981, CIG applied for a special exception permit and site plan approval. A hearing was held before the Bangor Planning Board on October 5, 1981. On that same date, the Planning Board voted to grant the special exception permit and it also approved the site plan. The plaintiffs, Jane Cushing *et. al.*, then filed a complaint in the Superior Court, Penobscot County, pursuant to M.R.Civ.P. 80B, seeking to reverse the decision by the Planning Board. (Hereafter this action will be referred to as CV–81–583).

The Superior Court heard CV–81–554 and CV–81–583 together and issued a single order affirming the decisions below. The plaintiffs then appealed to this Court. Because of the difference in procedure by which the cases came before the Superior Court, we reach the merits only in CV–81–554. In CV–81–554 we deny the appeal and affirm the Superior Court judgment. In CV–81–583, we sustain the appeal, not on the grounds advanced by plaintiffs, but on the ground that plaintiffs failed to exhaust their administrative remedies; we vacate the judgment and remand the case to Superior Court.

### I.

In its order affirming the decision of the Planning Board, the Superior Court did not address the plaintiffs' failure to appeal from the Planning Board to the Zoning Board of Appeals before filing a Rule 80B complaint in Superior Court. We, however, consider it determinative of our disposition of CV–81–583.

30 M.R.S.A. § 4963(2)(B)[5] permits a municipality to authorize either the zoning board of appeals or a "planning board, agency or office" to grant a special exception permit in the first instance. *See Thornton v. Lothridge,* 447 A.2d 473, 476 (Me.1982) (a town's zoning board of appeals had authority under section 4963(2)(B) to make initial determination whether applicant qualified for exception). Where, as in the instant case, the municipality has authorized the planning board to make the initial determination regarding a special exception permit,[6] then the planning board is "the office charged with the enforcement of the zoning ordinance" as contemplated by 30 M.R.S.A. § 4963(1)[7] with respect to the

---

**4.** The purpose underlying an Administrative Appeal is:

[T]o hear and decide where it is alleged there is an error in any order, requirement, decision or determination made by the Code Enforcement Officer in the enforcement of this Ordinance.

Bangor, Me., Ordinances Ch. 8, Art. 24, § 1(2)(a) (1982).

**5.** 30 M.R.S.A. § 4963(2)(B) provides: The board may approve the issuance of a special exception permit or conditional use permit in strict compliance with the ordinance; and provided the municipality has not authorized the

planning board, agency or office to issue said permits . . . .

**6.** Article 22, section 1 of the Bangor Zoning Ordinance provides in pertinent part: The Planning Board is hereby authorized to grant special exceptions hereinbefore set forth in this Chapter, in specific cases after public notice and hearing, subject to appropriate conditions and safeguards . . . .

**7.** 30 M.R.S.A. § 4963(1) provides in part: A board of appeals is established in any municipality which adopts a zoning ordinance for the purpose of hearing appeals from actions or failure to act of the office charged with the

granting of special exceptions. Therefore, the statutory scheme required the plaintiffs to appeal to the Bangor Zoning Board of Appeals before seeking judicial review in Superior Court. *See Fletcher v. Feeney,* 400 A.2d 1084, 1090 (Me.1979) (an initial zoning determination must be considered by a zoning board of appeals provided by sections 2411 and 4963 of 30 M.R.S.A. before a party may seek judicial review in Superior Court).

Plaintiffs claim that they could not take an appeal from the Planning Board to the Zoning Board of Appeals before filing their 80B complaint in Superior Court because the ordinance does not provide such a route of appeal. Rather, the ordinance expressly provides an avenue of review from the Planning Board directly to the Superior Court. Bangor, Me., Ordinances Ch. 8, Art. 24, § 3 (1982). Although the plaintiffs correctly claim that the ordinance did not establish a route of appeal from the Planning Board to the Zoning Board of Appeals,[8] this does not alter our decision that plaintiffs were required to appeal to the Zoning Board of Appeals before seeking judicial review.

■ Sections 2411 and 4963 of 30 M.R.S.A. compel a Maine municipality to establish a zoning board of appeals to review initial zoning determinations. *See Fletcher* 400 A.2d at 1087 n. 3. A municipality simply cannot create by ordinance an alternative route of appeal from the Planning Board to the Superior Court in derogation of the statutory scheme. In *Fletcher,* 400 A.2d at 1088, we held that, inasmuch as a provision of an ordinance purports to establish an alternative route of appeal, that provision is a nullity. *See also Levesque v. Inhabitants of the Town of Eliot,* 448 A.2d 876, 878 n. 2 (Me.1982). Thus, the statutory scheme must override any failure by the ordinance to provide a route of appeal to the Zoning Board of Appeals from a decision by the Planning Board concerning an initial application for a special exception permit.

In *Fletcher,* 400 A.2d 1084, appellants directly appealed to the Superior Court from an initial zoning determination of the Northfield Planning Board because the Town of Northfield had not appointed a board of appeals. We dismissed their subsequent appeal to this Court saying that the Superior Court and, therefore, this Court lacked subject matter jurisdiction. To provide the appellants in *Fletcher* with the opportunity to appeal to a zoning board of appeals, we additionally ordered the case remanded to the Superior Court with instructions to the Superior Court to enter an order compelling the Selectmen of the Town of Northfield to appoint a board of appeals. *Fletcher,* 400 A.2d at 1086. Unlike *Fletcher,* a functioning Zoning Board of Appeals was in existence in Bangor at the time of this suit. Because there existed a functioning Zoning Board of Appeals, that Board should have reviewed the initial zoning determination of the Planning Board as

enforcement of the zoning ordinance. Such board of appeals shall be governed by section 2411 ....

**8.** The City of Bangor argued that the ordinance provides an avenue of review. It first pointed to Article 22, section 5 which provides:

Upon notification of the final decision of the Planning Board [concerning the special exception permit] the Code Enforcement Officer shall immediately issue or deny a building permit or occupancy permit in accordance with the decision of the Planning Board.

It reasoned that, since the Code Enforcement Officer must issue or deny the occupancy permit in accordance with the Planning Board's decision, then plaintiffs could take an administrative appeal from the Code Enforcement Officer's action pursuant to Article 24, section 1(2)(a). *See supra* note 4 for text of ordinance. We disagree. When the Code Enforcement Officer issues or denies the permit pursuant to Article 22, section 5, he is merely performing a ministerial task; it is the Planning Board which makes the decision regarding the special exception permit. Therefore, any error arising from the denial or grant of a special exception permit is attributable only to the acts of the Planning Board. Because Article 24, section 1(2)(a) contemplates appeals from errors of the Code Enforcement Officer, we conclude that the ordinance does not contemplate the avenue of review as argued by the City of Bangor.

required by the statutory scheme prior to judicial review, even though the ordinance failed to provide such an avenue of review. Therefore, we vacate the judgment of the Superior Court in CV–81–583 with instructions to the Superior Court to remand the case to the Bangor Zoning Board of Appeals. Plaintiffs will then be required to seek relief from the Zoning Board of Appeals before seeking judicial review in Superior Court.

■ As in *Fletcher,* this result is supported by the doctrine of exhaustion of administrative remedies. Although we purportedly dismissed appellant's appeal in *Fletcher* on the ground that the Superior Court and, therefore, this Court, lacked subject matter jurisdiction, we also stated that the result "would be warranted by the principles of exhaustion of administrative remedies and of primary jurisdiction addressed in *State ex rel. Brennan v. R.D. Realty Corp.,* 349 A.2d 201 (Me.1975)." *Fletcher,* 400 A.2d at 1090; *See also Levesque,* 448 A.2d at 878 (describing the principles of exhaustion of administrative remedies, primary jurisdiction, and ripeness as having similar purposes). A close examination of *Fletcher* reveals that, although we primarily based the decision on lack of subject matter jurisdiction, that basis conflicts with the fact that we ordered the case remanded to the Superior Court with instructions to the Superior Court to enter an order compelling the Selectmen of the Town of Northfield to appoint a board of appeals. *Fletcher,* 400 A.2d at 1086. If this Court had indeed lacked subject matter jurisdiction, then we would have been required to simply dismiss the case. On the other hand, the principle of exhaustion of remedies is a limitation which courts impose upon themselves. *Stanton v. Trustees of St. Joseph's College,* 233 A.2d 718, 724 (Me.1967). It is a principle whereby this Court exercises its jurisdiction as a matter of discretion to avoid interference with the functions of an administrative agency and to recognize the advantages of leaving some preliminary determinations to the agencies which are particularly competent to handle them. *Levesque,* 448 A.2d at 878; *Stanton,* 233 A.2d at 724. The action we took in *Fletcher* would not conflict with application of this discretionary principle. Therefore, to reconcile our disposition of *Fletcher* with the fact that we took action in that case on appeal, we now conclude that *Fletcher* properly rested on the alternative ground set forth in that opinion that a party must exhaust its administrative remedies before seeking judicial review.

■ "The doctrine of exhaustion of administrative remedies requires a party to proceed in the administrative/municipal arena until all possible administrative remedies are exhausted before initiating action in the courts." *Levesque,* 448 A.2d at 878. In the instant case, plaintiffs failed to exhaust their administrative remedies by failing to appeal the initial decision of the Planning Board to the Zoning Board of Appeals before filing the Rule 80B complaint in Superior Court. None of the recognized exceptions to the doctrine of exhaustion of remedies applies here. *See Churchill v. S.A.D. No. 49 Teachers Ass'n,* 380 A.2d 186, 190 (Me.1977). Furthermore, unlike other cases that have come before this Court such as *Levesque,* 448 A.2d 876, a Zoning Board of Appeals with statutory jurisdiction over an appeal from an initial zoning determination by the Planning Board clearly existed at the time plaintiffs appealed to the Superior Court. Accordingly, we vacate the judgment of the Superior Court and remand with the instructions previously set forth.

## II.

■ In CV–81–554, plaintiffs, Jane Cushing *et al.,*[9] claim that the Zoning Board of

---

9. From a review of the record, it appears that only Jane Cushing, Charles Civiello, Lillian Webber and Michael Ingersoll had standing to appeal to the Superior Court from the Zoning Board of Appeals' decision. 30 M.R.S.A. § 2411(3)(F) provides in relevant part: "An appeal may be taken, within 30 days after the decision is rendered, by any *party* to Superior

Appeals erred by granting to CIG an administrative appeal with respect to three site development deficiencies and a variance from all five site development deficiencies. The plaintiffs initially raise a number of procedural issues regarding whether CIG properly appealed from the decision of the Code Enforcement Officer to the Zoning Board of Appeals.

Plaintiffs first contend that the Zoning Board of Appeals lacked jurisdiction over the appeal from the Code Enforcement Officer because CIG failed to specifically set forth the ground for appeal as required by Article 24, section 2 of the ordinance. Article 24, section 2 provides in relevant part: "Persons appealing the decision of the Code Enforcement Officer shall first file a form for such purposes with the Code Enforcement Officer ... All forms for appeals shall specifically set forth the ground basis for the appeal."

In the form provided for appeal, CIG cited Article 24, section 1(2)(B) as the ground for its appeal. Article 24, section 1(2)(B) sets forth the powers and duties of the Zoning Board of Appeals regarding variance appeals. Therefore, by citing this section of the ordinance, CIG specifically set forth a request for a variance. Furthermore, the provided form requires only that the appealing party set forth the section(s) of the ordinance under which the appeal is being taken. We conclude that CIG complied with the ordinance when it filed its appeal and, accordingly, we find no error here.

Plaintiffs next challenge the authority of the Zoning Board of Appeals to grant an administrative appeal on its own initiative. The Zoning Board of Appeals has power to grant an administrative appeal "[t]o hear and decide where it is alleged there is an error in any ... determination made by the Code Enforcement Officer ...." Bangor, Me., Ordinances Ch. 8, Art. 24, § 1(2)(a) (1982). The Board granted an administrative appeal on its own in the instant case because it found that the Code Enforcement Officer erroneously determined that the side yard and set back measurements did not comply with the ordinance. The Board found that these would be allowed nonconformities in accordance with the provisions of the ordinance. Therefore, in accordance with its policy of granting an administrative appeal when a party appeals to it seeking a variance, the Zoning Board of Appeals granted an administrative appeal to correct the erroneous determinations by the Code Enforcement Officer.[10]

Plaintiffs read the ordinance to require separate filings for administrative and variance appeals. Because CIG never separately filed for an administrative appeal, they contend that the Board had no power to

---

Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B." (Emphasis supplied). In *Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982), we defined "party" as "any participant in the proceedings who is aggrieved by the action or inaction of the Zoning Board of Appeals". We further stated that it must appear that they were parties before the board and they must also demonstrate that by reason of the board's action or inaction they suffered a particularized injury. *Singal,* 440 A.2d at 1050. The record reveals that the above named persons participated in the hearing before the Zoning Board of Appeals and that they owned or resided at property near 3 Hudson Street in Bangor. Furthermore, the objections raised by these parties at the hearing demonstrated a potential particularized injury. The record fails to reveal whether any of the other plaintiffs participated

in the hearing and these other plaintiffs also did not demonstrate a particularized injury. Therefore, only the above named plaintiffs were proper party plaintiffs in CV–81–554.

**10.** The Zoning Board of Appeals also granted a variance with respect to these requirements. As noted in the text, the side yard and set back measurements, however, were permitted by the ordinance. Because a variance serves to relax the terms of the ordinance, it was unnecessary for the Board to grant a variance. Rather, the granting of an administrative appeal to correct that error was the appropriate form of review. Therefore, CIG needed a variance only with respect to the parking space and lot area requirements. Whether a variance was properly granted with respect to those requirements is discussed below.

grant an administrative appeal. We disagree. A straightforward reading of the ordinance does not require such a procedure. Furthermore, we conclude that the Bangor Zoning Board of Appeals' policy of granting an administrative appeal whenever a party appeals to it seeking a variance comports with the ordinance and its enabling legislation (30 M.R.S.A. §§ 2411, 4963). When, as in the instant case, an appeal is properly before the Zoning Board of Appeals, the enabling legislation certainly gives the Zoning Board of Appeals the authority to address all issues raised and to correct plain error. Therefore, because a variance was unnecessary for three site development requirements due to erroneous determinations by the Code Enforcement Officer, we conclude that the Zoning Board of Appeals did have the power to grant an administrative appeal and thereby correct that error even though CIG sought only a variance on its appeal to the Zoning Board.

■ Finally, the plaintiffs contend the Zoning Board of Appeals erred in granting the variance from the lot area and parking space requirements.[11] We review whether "the Zoning Board of Appeals acted arbitrarily, capriciously, or unreasonably when it granted the variances". *Thornton,* 447 A.2d at 475. It is not proper for us to substitute our judgment for that of the zoning board; rather, our review is limited "to determining whether from the evidence of record facts could reasonably have been found by the zoning body to justify its decision". *Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982).

To be entitled to a variance, the burden was on the applicant to prove by competent evidence the requisite "undue hardship" which would entitle them to a variance. *Driscoll,* 441 A.2d at 1029. In determining that CIG met that burden in the instant case, the ordinance required the Zoning Board of Appeals to make the following findings:

(1) the land in question cannot yield a reasonable return if used for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; (3) that the use to be authorized by the variance will not alter the essential character of the locality and (4) that the hardship is not the result of action taken by the applicant or a prior owner.

Bangor, Me., Ordinances Ch. 8, Art. 24, § 1(2)(b) (1982). These requirements set forth by the ordinance comport with the statutory prerequisites, 30 M.R.S.A. § 4963(3), which give the zoning board authority to grant a variance.

■ It clearly appears from the record that a literal adherence to the zoning restrictions of the ordinance would narrow the permitted uses of the property to only a single or two family residence. Competent evidence of record reveals that the Zoning Board reasonably concluded that the property would not yield a reasonable return for those uses because the property was best suited to use as a multi-family residence for greater than two families. There was also competent evidence to support the Zoning Board's finding that the granting of a variance would not alter the essential character of the locality. Testimony before the Zoning Board established that the locality contained a number of multi-family structures and at least three boarding type facilities.

The evidence before the Zoning Board established that the property predated the passage of the zoning ordinance. Having already found that the only permitted uses (single or two family residence) not requir-

11. Plaintiffs also contend that the Zoning Board of Appeals improperly concluded that a group home would qualify as a boarding home. The Board did not make such a ruling. The Code Enforcement Officer denied the application for a certificate of occupancy based on five site development deficiencies. Therefore, the only issue before the Zoning Board was whether CIG had demonstrated "undue hardship" justifying a variance from the site development requirements set forth by the Zoning Ordinance.

ing a variance would not yield a reasonable return, the Board reasonably found that this hardship was caused by the "imposition of modern day standards to a property whose current status has been in existence for some period of time", and not due to actions taken by the owner. Furthermore, the Board could reasonably have concluded from the evidence before it that the "unique circumstances" requirement had been met because this property was uniquely suited for use as a multiple family residence for more than two families and, therefore, the owner's plight was not caused by the general character of the neighborhood, but by application of modern day standards to property predating the zoning ordinance. Accordingly, we conclude that the Zoning Board did not act arbitrarily, capriciously, or unreasonably in granting the variances.

The entry is:

In CV–81–554, Appeal denied. Judgment affirmed.

In CV–81–583, Appeal sustained. Judgment vacated. Remanded to Superior Court with instructions to remand to the Bangor Zoning Board of Appeals.

All concurring.