## SANFORD PROPERTIES, INC.

### v.

## TOWN OF SANFORD[1].

Supreme Judicial Court of Maine.

Argued March 6, 1992.
Decided May 28, 1992.

---

1. "A municipal zoning board of appeals, being an independent adjudicative body, is not a proper party to an appeal from its own decision." *Waltman v. Town of Yarmouth*, 592 A.2d 1079, n. 1 (Me.1991). Therefore, the Sanford Zoning Board of Appeals has been dismissed as a party to this appeal.

Joseph R. Mazziotti (orally), Gail Latouf Flewelling, Mazziotti & Flewelling, Portland, for appellant.

James A. Katsiaficas (orally), William H. Dale, Jensen, Baird, Gardner & Henry, Portland, for appellee.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

COLLINS, Justice.

Sanford Properties, Inc. (the owner) appeals from a Superior Court decision (York County, *Brodrick, J.*), denying its Rule 80B appeal of a Town of Sanford Zoning Board of Appeals decision that interpreted Sanford's Zoning Ordinance as prohibiting mobile home parks. Finding no error we affirm.

In 1989, the owner submitted a plan to the Town of Sanford showing a proposed 175 unit mobile home park it intended to build on its eighty-two acres of land on old Route 109 in Sanford. The Town's Code Enforcement Officer (CEO) issued a memo, stating his belief that mobile home parks were a permitted use in rural residence zones as long as they complied with the minimum lot size established for such zones, 40,000 square feet. The owner filed an Administrative Appeal with the Town's Zoning Board of Appeals (ZBA), challenging the CEO's conclusion that the minimum lot size requirement applied to its project.

The appeal was noticed and the owner's project discussed during the next several meetings of the ZBA. Eventually the ZBA, by a three to one vote, decided that "mobile home parks are not allowed by Ordinance. Therefore, mobile homes allowed as single family residences must meet the criteria of single family residences in Rural Residential Zones." An appeal was taken from that decision, the Superior Court affirmed the Zoning Board's interpretation of the relevant zoning ordinances, and this appeal followed.

■ We review directly the zoning board's action and the burden of persuasion falls upon the party seeking to overturn the zoning board's decision. *See Waltman v. Town of Yarmouth*, 592 A.2d 1079, 1080 (Me.1991), and *Mack v. Municipal Officers of the Town of Cape Elizabeth*, 463 A.2d 717, 719–720 (Me.1983). "[T]he standard of review is whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Id.*

I.

In 1988 the Legislature enacted P.L.1987, ch. 770, § 9, then codified at 30 M.R.S.A. § 4965(3)(A, B), now codified at 30-A

M.R.S.A. § 4358(3)(A–M) (Pamph.1991). The law imposed two requirements on towns. First, effective January 1, 1989, the law precluded towns from enforcing, with regard to then-existing mobile home park ordinances, a requirement that "the minimum size of lots within [the] parks ... be any larger than that which is required by the Manufactured Housing Board."[2] Second, effective January 1, 1990, the law required that towns permit mobile home parks, as defined by the state, to be developed. In response to that legislative action, the town amended its zoning ordinance and added section 6.6, tracking the language of the first statutory provision, effective January 1, 1989, as follows: "Notwithstanding any other requirement of this ordinance to the contrary, the minimum lot size for mobile home parks shall not be required to be any larger than that which is required by the State Manufactured Housing Board by rule...."

The owner argues that section 6.6 makes a mobile home park a permitted use under the Town's ordinance and contends that the ZBA committed an error of law when it concluded that mobile home parks are not a permitted use in rural residential zones. The owner argues that all zoning ordinances must be construed liberally in favor of the landowner. *See LaPointe v. City of Saco,* 419 A.2d 1013, 1015 (Me. 1980). Therefore, the owner argues, because mobile home parks are not an expressly prohibited use, they must be a permitted use. *See Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1260 (Me. 1981).

The owner's argument, however, fails to recognize that the phrase "mobile home park" has different meanings under the Town's ordinance and 30–A M.R.S.A. § 4358(1)(B) (Pamph.1991). At the time of these enactments the Town's ordinance

stood as it had since it was originally promulgated in 1977; mobile homes were treated as single family residences,[3] and mobile home developments, whether the lots were leased or sold, were permitted under the ordinance section governing subdivision and required a 40,000 square foot lot. In contrast, since the early 1980s the state has differentiated between a mobile home park and a mobile home subdivision on the basis of who owned title in the land. A mobile home park means "a parcel of land under unified ownership," whereas a mobile home subdivision involves "individually owned lots." 30 M.R.S.A. § 4963, *repealed and replaced by* P.L.1987, ch. 737, § A(1) (now codified at 30–A M.R.S.A. § 4358(1)(B, C)). Thus, when P.L.1987, ch. 770, § 9, was enacted, the Town's ordinance permitted mobile home parks only in the general sense of the term, and only so long as the parks complied with the ordinance's subdivision requirements. The Town's zoning ordinance, enacted in 1977, simply did not deal with mobile home parks as statutorily defined at the time of enactment of P.L. 1987, ch. 770 § 9, and the provision in that statute relating to lot size that became effective January 1, 1989, was inapplicable because the Town had no ordinance regulating mobile home parks *per se.* The Legislature recognized that towns needed time to comply with the second provision in that statute requiring that towns permit mobile home parks and postponed the effectiveness of that provision to allow them to modify their zoning laws accordingly.

In its attempt to interpret section 6.6 of the Town's ordinance, the ZBA looked to the section's legislative history. Section 6.6's language mirrors that used in P.L. 1987, ch. 770, § 9, governing lot size of then-existing mobile home developments. The ZBA reasonably concluded that section 6.6 was intended to conform with the new state mandates and was not intended to

---

2. The statutory maximum lot size was changed by P.L.1989, ch. 506, § 3, to preclude a municipality from requiring that mobile home park lots be larger than 6,500 square feet. *See* 30–A M.R.S.A. § 4358(3)(A)(1)(a) (Pamph.1991).

3. In 1977, section 6 of the Sanford ordinance provided that:

> Until such time as a Mobile Home Ordinance is adopted, all mobile homes shall be treated as single family residences allowable in Rural Residence Zones and subject to all zoning requirements of said zones.

make mobile home parks, as defined by statute, a permitted use until January 1, 1990, as required by P.L.1987, ch. 770, § 9, now codified at 30–A M.R.S.A. § 4358(3)(M). Such an interpretation is further supported by the Town's failure to designate zones for mobile home parks or to enact any other regulations with respect to such projects at the same time that it enacted section 6.6. The Town had two years to take these additional steps.

At the time the Town's zoning ordinance was enacted, the state-mandated minimum lot size requirements for mobile home parks did not exist and the Town was free to set its own limits. After the state mandated uniform minimum lot size requirements, the Town updated its zoning ordinance to meet the new state mandates but those mandates were not effective until January 1, 1990. When considered in context, the ZBA's interpretation of section 6.6 as not modifying the minimum lot size requirements until January 1, 1990, the effective date of 30–A M.R.S.A. § 4358, requiring towns to allow mobile home parks, is not unreasonable and cannot be said to constitute an error of law.

## II.

 The owner contends that the ZBA reversed a decision of the Town's CEO. Under the Town's bylaws, such action can only be taken with four concurring votes. In this instance, there were only three concurring votes. The CEO's memo provided that mobile home parks are a permitted use, but that they are subject to the rural residential zone's minimum lot size requirement, 40,000 square feet. The owner claims that by ruling that mobile home parks are not a permitted use the ZBA reversed the position taken by the CEO. The ZBA did not reverse the CEO's decision, it merely clarified that under the Town's Ordinance mobile homes were a permitted use but that mobile homes parks, as defined by 30–A § 4358(3), were not.

## III.

The owner claims that the ZBA abused its discretion when it decided that

mobile home parks are not a permitted use despite the fact that the legally noticed issue before it was the minimum lot size requirements for a mobile home park. The ZBA did deal with the issue that was noticed. It affirmed the CEO's conclusion that the minimum lot size in a rural residential zone was 40,000 square feet. Because under current Maine law it could not impose a minimum lot size requirement on a mobile home park greater than 6,500 square feet, it concluded that under the Town's Zoning Ordinances, mobile home parks, as defined by 30–A M.R.S.A. § 4358, were not a permitted use.

The entry is: Judgment affirmed.

All concurring.