STATE OF MAINE
KENNEBEC, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP 15-12

JONATHAN LAWLESS, et.al,
         Petitioner

v.                                              DECISION

TOWN OF VIENNA et. Al,
         Respondent
      and

GLOBAL TOWER ASSETS, LLC et. al,
         Intervenors

Petitioners Jonathan, Ed, Kathy and Jesse Lawless filed a M.R. Civ. P. 80B

appeal challenging the decision of the Board of Appeals of the Town of Vienna to

grant a permit to Intervenors Global Tower Assets, LLC ("GTA") and Northeast

Wireless Networks, LLC ("NWN") for the construction of a cell phone tower on a lot

abutting land owned by the Petitioners. Petitioners contend that the Board of

Appeals: 1) lacked jurisdiction over Intervenors' appeal of the underlying Planning

Board's Decision; 2) misinterpreted the language of the Wireless Ordinance; and 3)

erred in failing to reconsider their decision as requested by Mr. Weingarten.

NWN is the holder of a Federal Communication Commission ("FCC") license

authorizing the provision of personal communication services to the Town of

Vienna and surrounding area. GTA works with wireless carriers such as NWN to

identify, develop, and construct appropriate sites for the development of personal

wireless service facilities, such as the telecommunications tower at issue (the

1

"Tower"). Petitioners own property that abuts or is located close to the Tower. For purposes of the present appeal, Repondent Town of Vienna ("Town") includes two discrete instrumentalities: 1) a Planning Board and 2) a Board of Appeals.

In September 2013, Intervenors submitted an application to the Planning Board for local approval of their telecommunications tower pursuant to the Town's Wireless Telecommunications Facilities Siting Ordinance ("Wireless Ordinance"). Petitioner Ed Lawless served on the Town's Planning Board, but recused himself due to the conflict of interested created by his—and his family's—proximity to the Tower. On May 13, 2014, the Planning Board issued a written decision finding that Intervenors met all of the Wireless Ordinance review standards except for the safety setback standard set forth in Section 7.2(E). The Wireless Ordinance setback standard provides, in pertinent part:

E) Setbacks.

(1) A new or expanded wireless telecommunications facility must comply with the setback requirements for the zoning district in which it is located, or be setback one hundred five percent (105%) of its height from all property lines, whichever is greater. The setback may be satisfied by including the area outside the property boundaries if secured by an easement. The following exemptions may apply:

a) The setback may be reduced by the Planning Board on a showing by the applicant that:

(i) The facility is designed to collapse in a manner that will not harm other property;

(ii) Ice build-up and discharge will not present a public safety hazard; [and]

2

(iii)     Any hazard, guywires or tower structure will not adversely affect public safety.

Interpreting this language the Planning Board's primary consideration was whether or not to grant an exemption to the setback requirements of the Ordinance. Its chairman explained that the Ordinance says the Planning Board "may" grant a setback if certain conditions are met, not that the Planning Board must grant an exemption. While the ordinance does not offer guidance as to what conditions the word "may" apply to, its chairman believed it could apply to "visual impact, effectiveness of coverage, safety, characteristics of the offended abutting property and probably some other factors." The chairman's comments focused on the safety and characteristics of the abutting property. He explained that: 1) the Intervenors did not adequately respond to his concerns about the Tower collapsing under wind forces that were stronger at the bottom of the Tower than the top; 2) he believed that while it was unlikely to occur, the movements of the Tower if it collapsed could sling ice onto adjacent property; and 3) the abutting property is residential, creating a "potential, albeit small, safety hazard" to the abutting residential property owner. The Planning Board voted 4-0 against granting a setback exemption under Section 7.2(E) because of the aforementioned safety concerns.

Intervenors filed a timely administrative appeal on May 20, 2014, pursuant to Section 10 of the Wireless Ordinance. ("Any person aggrieved by a decision of the Planning Board under this ordinance may appeal the decision to the Board of Appeals"), After receiving Intervenors' administrative appeal, the Town discovered there were no records that a municipal board of appeals had been lawfully established by the Town's legislative authority. On August 19, 2014 a special town

3

meeting was held and the Town voters adopted a Board of Appeals Ordinance to lawfully constitute a Board of Appeals. Appeals were filed following the adoption of the Board of Appeals Ordinance to be reviewed using an appellate review standard. Pending appeals—such as the Intervenors'—"shall be heard and decided under a *de novo* review standard consistent with the regular administration of appeals under 30-A M.R.S. § 2691." (Board of Appeals Ordinance §V(E).)

On November 24, 2014, the Town Board of Appeals held a pre-hearing meeting to review the scope of Intervenors' administrative appeal, and to schedule a site visit and hearing. Petitioners did not attend this pre-hearing meeting and did not object to the Board of Appeals proceeding with a *de novo* review, nor did any party or person raise any issues other than the safety setback standard. On January 13, 2015, the Board of Appeals conducted a properly noticed site visit and de novo hearing. At the hearing, Intervenors presented testimony regarding the Tower's safety design as well as documentary evidence. At the hearing's conclusion, the Board of Appeals rendered its decision by unanimously voting that Intervenors had satisfied the safety setback standard of the Wireless Ordinance, and subsequently issuing its Notice of Decision granting Intervenors' administrative appeal and approving their Tower application.

The Notice of Decision explained that based on the evidence submitted "the telecommunications facility proposed by GTA and NWN was designed to collapse in a manner that will not harm other property or adversely affect public safety, and that ice build-up and discharge will not present a public safety hazard." From this factual finding, the Board of Appeals concluded:

4

[A]s a matter of law that the telecommunications facility proposed by GTA and NWN satisfies the alternate setback standard set forth in Section 7.2E of the Ordinance because GTA and NWN have shown (i) the facility is designed to collapse in a manner that will not harm other property; (ii) ice build-up and discharge will not present a public safety hazard; and (iii) the tower structure will not adversely affect public safety.

The Board of Appeals therefore concluded a reduction in the setback requirement from 105% of the tower height (in this case, 199.5 feet) to 45% of the tower height (in this case, 85 feet, the distance in which the tower is designed to be wholly contained, which is also within the subject property boundaries) satisfies the setback standards set forth in Section 7.2E of the Ordinance.

Before the Notice of Decision issued, Robert Weingarten, a Town resident, filed a Request for Reconsideration of the Board of Appeal's decision. The Board of Appeals, however, declined "the invitation to reconsider its decision" noting that Mr. Weingarten was "not an abutting landowner, not otherwise party to this proceeding, and did not participate in the January 13, 2015 public hearing."

When acting in an appellate capacity pursuant to M.R. Civ. P. 80B, the Superior Court reviews the operative decision below for abuses of discretion, errors of law, and findings unsupported by substantial evidence in the record. *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773; *Sanford Properties, Inc. v. Sanford*, 609 A.2d 287, 288 (Me. 1992). When a board of appeals holds a hearing de novo, its decision is the operative decision the Superior Court reviews.

To determine the proper role of a board of appeals, courts examine the statute authorizing the municipality to establish a board of appeals and a municipality's own ordinance. *Stewart*, 2000 ME 157, ¶¶ 6-7, 757 A.2d 773. Pursuant to 30 M.R.S. § 2691, the Law Court explained that boards of appeal perform de novo reviews of any decisions under review, unless there is express

5

ordinance language that directs a purely appellate review. *Id.* (discussing 30 M.R.S. § 2691(3)(D)). In this case, the operative decision under appellate review was the Town's Board of Appeals because under the Wireless Ordinance in effect at the time of the Intervenors' appeal, the Board conducted a de novo review of the appeal.

Petitioners contend that the Intervenors should have brought their appeal from the Planning Board's Decision directly to the Superior Court pursuant to M.R Civ. P. 80B. In support of this argument, Petitioners explain that if a town institutes land use controls within the town, it is required to establish an appeals board through charter language or ordinance passage. *See* 30-A M.R.S. §§ 2691, 4353. It is undisputed that the Town did not have a legally constituted appeals board at the time Intervenors filed their appeal of the Planning Board's Decision. While the Town passed an Appeals Board Ordinance on August 19, 2014, Petitioners contend this did not give the Board of Appeals authority to hear the appeal. This is because 1 M.R.S. § 302 states, in pertinent part:

> Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby. For purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing.

1 M.R.S. § 302. The Town Ordinance creating the Board of Appeals could have applied retroactively, but in order to do so, the ordinance would have needed to contain a retroactivity clause. (citing *Kittery Retail Ventures,* 2004 ME 65, ¶¶ 11-12, 856 A.2d 1183; *City of Portland v. Fisherman's Wharf Associates III,* 541 A.2d 160, 164 (Me. 1988)).) The Town's ordinance did not, however, contain a retroactivity

6

clause. Accordingly, Petitioners argue, the Intervenors appeal should have been handled as if no Appeals Board Ordinance was passed in August 2014.

As a result, Petitioners argue the Wireless Ordinance authorized an appeal to a body that was not legally constituted at the time of appeal and the Appeals Board Ordinance did not contain a retroactivity clause. Petitioners argue that the Court should look to the body of Vienna Land Use Ordinances to identify any other authorization for appellate jurisdiction. Specifically, Petitioners point the Court to the Town Subdivision Regulations, which state, in pertinent part, that "[a]n appeal may be taken, within thirty (30) days from the Planning Board's decision on the Final Plat, by any party to Superior Court in accordance with Rule 80B of the Rules of Civil Procedure. Petitioners argue that Intervenors should have brought their appeal directly to the Superior Court.

The Town points out that it is not proper for a case to go directly to Superior Court unless there is an ordinance so stating. Section 10 of the Wireless Ordinance is specific that appeals go to the Board of Appeals. The Town argues that the ordinance cited by Appellants—regarding subdivision regulations—is not applicable to the present case. The Town argues that Petitioners have not cited any case law that holds under these circumstances that the Town lost jurisdiction.

Intervenors argue that the Wireless Ordinance sets forth a clear grant of jurisdiction to hear administrative appeals arising from Planning Board decisions. In particular, the Ordinance states that any person aggrieved by a decision of the Planning Board "may appeal the decision to the Board of Appeals." (Wireless Ordinance, § 10).

7

Intervenors point to case law in which the Law Court remanded a matter back to the municipality with instructions to lawfully constitute a board of appeals because the town had failed to do so and the court lacked jurisdiction (citing and discussing *Fletcher v. Feeney*, 400 A.2d 1084, 1090 (Me. 1979).) The Law Court determined that the aggrieved persons had standing to institute a mandamus action in court. In *Fletcher*, the appellants directly appealed to the Superior Court from an initial zoning determination of the Northfield Planning Board because the Town of Northfield had not appointed a board of appeals. (*Fletcher*, 400 A.2d at 1086). The Law Court dismissed the appellants appeal saying that the Superior Court, as well as the Law Court itself, lacked subject matter jurisdiction, and remanded the matter to the Superior Court with instructions to enter an order compelling the Selectmen of the Town of Northfield to appoint a board of appeals. (*Fletcher*, 400 A.2d at 1086).

In *Cushing v. Smith*, Intervenors contend that the Law Court modified its holding in *Fletcher* by concluding the correct basis for its remand instructions to remedy the Town's failure to lawfully constitute a board of appeals was the exhaustion of administrative remedies doctrine, and not a jurisdictional basis. (citing *Cushing v. Smith*, 457 A.2d 816, 821 (Me 1983); *see also State ex rel. Brennan v. R.D. Realty Corp.*, 349 a.2d 201, 206 (Me. 1975)).)

*Cushing* involved an appeal to the Superior Court from the decision of the Bangor Planning Board. 457 A.2d at 819. At issue was the impact of the plaintiffs' failure to appeal from the Planning Board's decision to the Zoning Board of Appeals before filing their Rule 80B complaint in Superior Court. *Id.* *Cushing* explained that the statutory scheme governing appeals from a decision regarding

8

special exemption permit "required the plaintiffs to appeal to the Bangor Zoning Board of Appeals before seeking judicial review in Superior Court." *Id.* at 819-20.

*Cushing* explained that a close examination of *Fletcher* reveals that, "although we primarily based the decision on lack of subject matter jurisdiction, that basis conflicts with the fact that we ordered the case remanded to the Superior Court with instructions to the Superior Court to enter an order compelling the Selectmen...to appoint a board of appeals." (discussing *Fletcher*, 400 A.2d at 1086). Accordingly, *Cushing* clarified "that *Fletcher* properly rested on the alternative ground set forth in that opinion that a party must exhaust its administrative remedies before seeking judicial review."

*Cushing* explained that the fact that the ordinance did not establish a route of appeal to the Zoning Board of Appeals did not alter the court's decision that plaintiff's were required to first appeal to the Zoning Board of appeals. This was because former sections 2411 and 4963 of 30 M.R.S.A. compelled a Maine municipality to establish a zoning board of appeals to review initial zoning determinations, and a municipality cannot simply create an alternative route of appeal in derogation of the statutory scheme. (*Fletcher*, 400 A.2d at 1087 n.3).

Intervenors argue the only remedy available would be a Court order directing the Town to lawfully constitute a Board of Appeals and properly hear the Intervenors' administrative appeal. Since the Town has already done this, Peitiioners' claims are moot.

The Court finds that the Board of Appeals had jurisdiction to hear Intervenors' appeal. This is because 30-A M.R.S. § 4353—like former 30-M.R.S. §

9

4963—compels the Town to establish a board of appeals if it adopts zoning ordinances. 30-A M.R.S. § 4353(1) ("Any municipality which adopts a zoning ordinance shall establish a board of appeals subject to this section...[t]he board of appeals is governed by section 2691"). In addition, section 4353 requires appeals to first go to the Board of Appeals unless the municipal ordinance only permits a direct appeal to Superior Court. 30 M.R.S. § 4353(1). In this case, the Wireless Ordinance does not authorize appeals directly to the Superior Court.

The Town's action in properly establishing the Board of Appeals and then having said Board hear the Intervenors' appeal is the precise process *Cushing* required in the absence of a properly established Board of Appeals.

Petitioners contend that the Board of Appeals used the wrong standard in its consideration of whether to grant a waiver to the setback requirements in the Wireless Ordinance. They point out that the Wireless Ordinance states that the "setback *may* be reduced by the Planning Board upon a showing by the applicant that...The facility is designed to collapse in a manner that will not harm other property." (Wireless Ordinance § 7.2E(1)(a)(i)) (emphasis added).) They contend that the argument before the Board of Appeals inferred that the Board was required to grant a setback waiver in light of the information submitted by Intervenors. Indeed, Petitioners point out that the May 20, 2014 appeal application states that the Intervenors "sought a waiver of the greater setback of the [Wireless Ordinance] and presented comprehensive and complete testimony and documentation to address the criteria set forth in Section 7(2)(E)(1)(a)(i)(ii), and (iii) [of the Ordinance]." Intervenors argue that the Planning Board's Decision was arbitrary

10

and capricious, allegedly inferring that, given the information that was presented to them, the Board of Appeals was required to grant the waiver.

The Board of Appeals, however, had discretion in whether to grant the setback waiver. This, Petitioners argue, is demonstrated by the use of the word "may" in the section on waivers, as compared to the balance of the Ordinance, that uses the word "must" on almost every page. (citing *In re the Plaza Resort at Palmas, Inc. v. Scotiabank De Puerto Rico*, 741 F.3d 269, 276 (1st Cir. 2014) ("[t]hat phrase ["may be recorded"] unambiguously indicates that recordation of special real property rights is an option, not an obligation); *see also Rastelli v. Warden, Metro. Correction Center*, 782 F.2d 17, 23 (2d Cir. 1986) ("The use of a permissive verb— "may review" instead of "shall review"—suggests a discretionary rather than mandatory review process.").) Because the Board of Appeals granted the setback under the misunderstanding that it had no discretion in the matter, Petitioners argue the matter should be remanded for reconsideration consistent with the Court's order.

The Town responds that the Board of Appeals properly concluded that based upon the language of the Wireless Ordinance and the "constitutional provision against discretionary and standardless [sic] ordinances," the exemption was mandatory if the standards were satisfied. The Town contends that even though the Wireless Ordinance uses the word "may" twice in the setback exemption section, it is clear from how it is drafted that "may" means "shall" in this context. The Town argues that the appropriate meaning to be given words such as "may" and "shall" depends not on the form of the words, but the intent of the drafters. (citing *Hartley*

11

*v. State*, 249 A.2d 38, 44 (Me. 1969); *Summers v. Dooley*, 481 P.2d 318, 320 (Idaho 1971)).) In the present context, the Town argues that interpreting "may" to be discretionary would result in an unconstitutional reading because it would give the Board unfettered discretion. In order to avoid an unconstitutional interpretation, the Board did what it was legally required to do, interpret the Wireless Ordinance in a way that made it constitutional, i.e. reading "may" as "shall." (citing *State v. Brown*, 2014 ME 79, ¶ 24, 95 A.3d 82; *Anderson v. Town of Durham*, 2006 ME 39, ¶ 19, 895 A.2d 944; *State v. Davenport*, 326 A.2d 1, 5-6 (Me. 1974)).) The Town argues that a municipality may not delegate to itself unfettered discretion to issue or not issue permits. (citing *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50, 53 (Me. 1968);

Although the record is not entirely clear, it appears that the Board of Appeals' did not interpret the word "may" in the phrase "[t]he setback may be reduced by the Planning Board on a showing by the applicant..." in a discretionary sense. The Board of Appeals read the aforementioned phrase as requiring a reduction in the setback requirement if the setback standards in Section 7.2(E) of the Wireless Ordinance were satisfied. This is because the Board of Appeals' explained that the evidence indicated that the alternate setback standard set forth in Section 7.2(E) was satisfied and then, without further discussion, vacated the Planning Board's Decision denying the setback. Implicit within this ruling is the conclusion that because the setback standard was satisfied, the setback exemption *must* issue.

Having determined that the Board of Appeals did not interpret the word "may" in Section 7.2(E)(1)(a) of the Wireless Ordinance in a discretionary sense,

12

was that interpretation an error of law? *See Stewart*, 2000 ME 157, ¶ 4, 757 A.2d 773. When reviewing the constitutionality of an ordinance, the Court presumes "that the ordinance is constitutional and will reasonably construe the ordinance so as to avoid an interpretation that would render it unconstitutional." *State v. Brown*, 2014 ME 79, ¶ 24, 95 A.3d 83 (citations omitted).

In *Waterville Hotel Corp. v. Board of Zoning Appeals*, the Law Court addressed the question of whether a city could endow the board of zoning appeals with discretionary authority to approve or disapprove applications for permits without the guidance of any standards. 241 A.2d 50, 52 (Me. 1968). The ordinance at issue specified certain development requirements for a construction permit, but also stated that "all major changes of uses of land, buildings or structures in this [Commercial C] zone shall be *subject to the approval of the Board of Zoning Appeals.*" *Id.* at 51 (emphasis in original). In resolving this question, *Waterville* explained:

> The legislative body may specify conditions under which certain uses may exist and may delegate to the Board discretion in determining whether or not the conditions have been met. The legislative body cannot, however, delegate to the Board a discretion which is not limited by legislative standards. It cannot give the Board discretionary authority to approve or disapprove applications for permits as the Board thinks best serves the public interest without establishing standards to limit and guide the Board.

*Id.* at 52. Consistent with this explanation, *Waterville* determined that "where a zoning ordinance attempts to permit municipal officials to grant or refuse permits without the guidance of any standards, equal protection is denied the citizens." The rationale behind this statement of law is that "[w]ithout definite standards an ordinance becomes an open door to favoritism and discrimination, a ready tool for

13

the suppression of competition through the granting of authority to one and the withholding from another." *Id.* at 53 (quotation omitted).

In this case, Section 7.2(E)(1)(a) would be unconstitutional and void for vagueness if the term "may" was interpreted in a discretionary sense. This is because even though there are standards governing the reduction of the required setback, if "may" was interpreted in a discretionary sense, the Board of Appeals could identify additional standards and/or ignore the prescribed standards in reaching whatever result it wished. Such unguided discretion is not permitted under Maine law.

Given that interpreting the term "may" in Section 7.2(E)(1) in a discretionary sense would be unconstitutional, the question becomes whether the Board of Appeals committed an error of law by interpreting the phrase "may" in a mandatory sense. "The meaning of the terms or expressions in a zoning ordinance is a question of law for the court." *See Our Way Enterprises, Inc. v. Wells*, 535 A.2d 442, 444 (Me. 1998) (citations omitted). Undefined terms should be given their "common and generally accepted meaning" unless the context indicates otherwise. *Id.* (citations omitted). In addition, "[u]ndefined and ambiguous terms and expressions contained in an ordinance must be construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 15, 979 A.2d 86 (quotation omitted). The provisions of an ordinance "should be construed harmoniously so as not to render ineffective particular provisions" and "[w]hen a reasonable interpretation of a[n]

14

[ordinance] would satisfy constitutional requirements, we apply that interpretation." *Id.* (citation and quotations omitted).

Here, the ordinary and common sense meaning of the term "may" implies discretion. In addition, the fact that the Wireless Ordinance frequently utilizes the mandatory words "must" and "shall," indicates that the Town intended to grant discretion when it utilized the term "may." (Wireless Ordinance § 2 (persons wishing to establish a facility "shall first obtain an application" and "shall be subject to the provisions of this Ordinance") (Wireless Ordinance § 4 ("[n]o wireless telecommunication facility...shall be considered exempt...")); (Wireless Ordinance § 7.1 ("The Planning Board must find that the application meets the following standards").

However, the term "may" could also be interpreted as a gate-keeping term. *See May Definition,* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/may (last visited July 22, 2015) ("have permission to <you may go now>"). In particular, it could be interpreted to mean that a setback exemption is only available once the standards set forth in Section 7.2(E)(1)(a)(i-iii) are satisfied. This interpretation is consistent with the Ordinance listing three specific requirements for consideration when granting a setback exemption, because the Town would not have listed these specific requirements if it intended to give the Board of Appeals free rein in granting said exemption. (Wireless Ordinance § 7.2(E)(1)(a)(i-iii)).) It is also consistent with the requirement that the ordinance be reasonably construed so as to avoid an interpretation that would render it unconstitutional. *State v. Brown,* 2014 ME 79, ¶ 24, 95 A.3d 83; *see also Davis v. SBA*

15

*Towers II, LLC*, 2009 ME 82, ¶ 15, 979 A.2d 86 ("[w]hen a reasonable interpretation of a[n] [ordinance] would satisfy constitutional requirements, we apply that interpretation").

The Court finds that the Board of Appeals did not abuse its discretion or commit an error of law in interpreting the term "may" in a mandatory sense in Section 7.2(E)(1)(a) of the Wireless Ordinance. The Board may exercise its discretion in making findings of fact. Once so found, it must, ("mandatory"), render relief if the standards of the ordinance are satisfied.

In a footnote, Petitioners argue that while the Court may consider a number of procedural errors de minimis, they should be made part of the record. One of the alleged errors was the failure of the Chair of the Board of Appeals to allow the entire Board to consider and vote on a request for reconsideration asserted by Mr. Weingarten.

The Town responds that Section XI of the Appeals Ordinance, governing reconsideration, provides that the Board of Appeals "may" reconsider any decision. Given this discretionary language, it asserts that the Board of Appeals did not have to reconsider its previous opinion. In addition, the Town asserts that Mr. Weingarten lacked standing to seek reconsideration because he did not participate in the administrative proceedings or show a particularized injury. Intervenors echo the Town's argument that Mr. Weingarten lacked standing and that the grant of reconsideration by the Boards of Appeals is discretionary.

Section XI of the Appeals Ordinance provides that the Board of Appeals "may reconsider any decision" in "accordance with 30-A M.R.S. [§] 2691(3)(F). (R. 21

16

(Board of Appeals Ordinance § XI).) The Boards of Appeals' written decision explained that Mr. Weingarten "emailed a reconsideration request to the Chair of the Board of Appeals on January 21, 2015." It found however, that "[b]y failing to participate in the January 13, 2015[] hearing, Mr. Weingarten does not have standing to request reconsideration." Furthermore, it explained that even if he had standing, "The Board of appeals declines to reconsider its decision of January 13, 2015, because its action was not hasty, ill-advised, or erroneous, and there is no added information or changed situation that has developed since the Board's decision on January 13, 2015."

In order to have standing regarding the decision of a board of appeals, the individual must 1) have been a party before the board; and 2) demonstrate that he will suffer a particularized injury as a result of the board's action. *Harrington v. Kennebunk*, 459 A.2d 557, 559 (Me. 1983) (citations omitted). Because "matters before a local board of appeals are conducted in a fashion far less formal than court proceedings, an appellant need not have formally appeared as a party as long as it participated throughout the process." *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 Me 78, ¶ 12, 2 A.3d 284 (quotation and quotation marks omitted).

Here, there is no indication that Mr. Weingarten suffered a particularized injury or participated in the proceedings—aside from reading the minutes of the Board of Appeals' hearing—before requesting reconsideration. Given Mr. Weingarten's lack of injury and participation, the Board of Appeals did not abuse its discretion in declining to reconsider its decision.

17

The Court denies Petitioners' M.R. Civ. P. 80B appeal because: 1) the Board of Appeals had jurisdiction over Intervenors' appeal of the Planning Board's Decision; 2) the Board of Appeals did not commit an error of law or abuse its discretion in interpreting Section 7.2(E) of the Wireless Ordinance; and 3) the Board of Appeals did not abuse its discretion in declining to reconsider its decision.[1]

For reasons stated, the entry will be:

Petition is DENIED; Town of Vienna's Board of Appeal's Decision of February 9, 2015, Administrative Appeal of Global Tower Assets, LLC and Northeast Wireless Networks, LLC is AFFIRMED.

Clerk may docket by reference.

November 19, 2015

JUSTICE, SUPERIOR COURT

---

[1] Given this clear finding, the Court does not address the Town and Intervenor's secondary argument that the full Board exercised its discretion in refusing to reconsider its decision.

| Date Filed | 2/27/15 | Kennebec County | Docket No. AP-15-12 | F |

Action:  <u>Petition for Review</u>
         80B

**J. Marden**    ~~J. Mullen~~

Jonathan Lawless, et al.　　　　vs.　　　　Town of Vienna, et al.

---

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Lynne Williams, Esq.<br>13 Albert Meadow<br>Bar Harbor, ME  04609 | Stephen Langsdorf, Esq.<br>PO Box 1058<br>Augusta, ME  04332-1058<br><br>Neal Pratt, Esq. (Intervenors)<br>PO Box 15235<br>Portland, ME  04112-5235<br><br>Jonathan Pottle, Esq. (Intervenors)<br>PO Box 1210<br>Bangor, ME  044012-1210 |

Date of Entry

---

| | |
|---|---|
| 3/5/15 | Complaint, filed 2/27/15.  s/Williams, Esq. |
| 3/5/15 | Notice and Briefing Schedule issued.<br>Copy to Attys Williams and Langsdorf |
| 3/13/15 | Entry of Appearance on behalf of Town of Vienna, filed 3/12/15.  s/Langsdorf, Esq. |
| 3/18/15 | Motion to Intervene, filed. s/Pratt, Esq. |
| 3/23/15 | ORDER, Mullen, J (3/20/15)<br>Motion to Intervene, Granted. |
| 4/15/15 | Appellant's Brief, filed (4/14/15). s/Williams, Esq. |
| 4/15/15 | Acknowledgment of Receipt of Summons and Complaint, filed (4/14/15).  s/Williams, Esq. |
| 4/17/15 | Record filed.  s/Hamilton, Esq. |
| 5/13/15 | Copy of 3/20/15 Order and Notice and Briefing Schedule sent to Atty Pratt. |
| 5/20/15 | Letter filed (5/18/15)/ s/Pratt, Esq.<br>Re: Motion to Intervene and Briefing Schedule |
| 5/20/15 | Motion to Correct Rule 80B Record, filed (5/18/15). s/Pottle, Esq. |
| 5/25/15 | Brief of Defendant, Town of Vienna. filed (5/21/15). s/Langsdorf, Esq. |

| 5/25/15 | Brief of Parties-in-Interest, Global Tower Assets and Northeast Wireless Networks, filed (5/21/15). s/Pratt, Esq. |
|---|---|
| 5/29/15 | ORDER, Mullen, J. (5/28/15)<br>Motion to Correct 80B Record is GRANTED.<br>The pages identified as bates number 23 through 25 in Binder A concerning the passage of certain warrant articles in the document entitled "Vienna Town Warrant - Special Town Meeting" shall be replaced by Exhibit A to parties-in-interest's afore-described motion and constitute part of the Rule 80B record in this matter.<br>Copy to Attys Williams, Langsdorf, and Pottle |
| 6/5/15 | Appellant's Reply Brief, filed (6/3/15). s/Williams, Esq. |
| 7/2/15 | Oral argument scheduled 7/24/15 at 2:30.<br>Notice of Hearing sent to Attys Williams, Langsdorf, Pottle, Pratt |
| 7/31/15 | Oral argument not held on 7/24. To be rescheduled. |
| 8/6/15 | Letter requesting oral argument be rescheduled as a telephonic conference, and providing protection requests, filed 8/5/15. s/Williams, Esq. |
| 9/10/15 | Letter advising counsel for all parties have conferred, September 18 or 28 available for oral argument, filed 9/2/15. s/Pratt, Esq. |
| 10/9/15 | Oral argument scheduled 10/27/15 at 9:00.<br>Notice of Hearing sent to Attys Williams, Langsdorf, Pottle, Pratt |
| 10/21/15 | Motion to Change Time of Oral Argument, filed 10/19/15. s/Langsdorf, Esq. |
| 10/22/15 | Letter consenting to Atty Langsdorf's request to change time of argument, filed. s/Pratt, Esq. |
| 10/26/15 | ORDER, Marden, J. (10/23/15)<br>Motion to Change Time of Oral Argument is granted - 8:30 a.m. 10/27/15.<br>Attorney Langsdorf notified by phone. |
| 10/28/15 | Hearing held 10/27/15, J. Marden presiding.<br>Courtroom 6.<br>Under advisement. |
| 11/20/15 | DECISION, Marden, J. (11/19/15)<br>Petition is DENIED. Town of Vienna's Board of Appeal's Decision of February 9, 2015, Administrative Appeal of Global Tower Assets LLC and Northeast Wireless Networks, LLC is AFFIRMED.<br>Copy to Attys Williams, Langsdorf, Pottle, Pratt.<br>Copy to Repositories |
| 11/20/15 | Notice of removal of Record sent to Attys Pottle and Pratt. |