# United States Court of Appeals
## For the First Circuit

No. 23-1351

SARA HALSEY and SUSAN KIRALIS-VERNON,

Plaintiffs, Appellants,

v.

FEDCAP REHABILITATION SERVICES, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Montecalvo, Lynch, and Rikelman,
Circuit Judges.

Oriana Farnham, with whom William C. Herbert, Frank
D'Alessandro, Hardy, Wolf & Downing, P.A., and Maine Equal Justice
were on brief, for appellants.
Sarah K. Grossnickle, with whom Martha C. Gaythwaite, John P.
Giffune, and Verrill Dana LLP were on brief, for appellee.

March 4, 2024

**LYNCH**, **Circuit Judge**. Sara Halsey and Susan Kiralis-Vernon, the appellants, were participants in Additional Support for People in Retraining and Employment - Temporary Assistance for Needy Families (ASPIRE-TANF), a program promulgated by the state of Maine. See Me. Stat. tit. 22, § 3781-A(2). The purpose of ASPIRE-TANF is to "provide services and support to recipients of Temporary Assistance for Needy Families [(TANF), a federal program that provides grants to participating states,] and to reduce dependence on public assistance to the extent that adequate funding is available for that purpose." Id. § 3781-A(3). Maine's Department of Health and Human Services (Department) has been given the responsibility of administering the ASPIRE-TANF program. See id. § 3781-A(2). Under the governing statute, the Department may contract with a private agency to deliver services to participants in ASPIRE-TANF and is responsible for monitoring any such contract agency. See id. § 3782-A(2)-(3). ASPIRE-TANF participants have the right to a fair hearing before the Department in accordance with the Maine Administrative Procedure Act (MAPA). See id. §§ 3762(9)(B), 3788(2); Me. Stat. tit. 5, § 9051(1).

Halsey and Kiralis-Vernon brought this action in the U.S. District Court for the District of Maine against Fedcap Rehabilitation Services, Inc., (Fedcap) for damages, alleging that Fedcap violated its obligations in its role as a contract agency hired by the Department to administer ASPIRE-TANF services. Their

complaint also alleges that a Fedcap employee verbally assaulted Kiralis-Vernon at least in part because of her race, color, or national origin. Despite the Maine legislature's provision for an administrative review process to resolve disputes under ASPIRE-TANF, appellants did not seek to notify the Department of their complaints or to pursue their complaints through administrative hearings before the Department. The district court granted Fedcap's motion to dismiss on the ground that the appellants had not first pursued an administrative remedy before the Department as required by Maine law. Halsey v. Fedcap Rehabilitation Services, Inc., No. 1:22-cv-00119, 2023 WL 2529385, at *10 (D. Me. Mar. 15, 2023).

Halsey and Kiralis-Vernon appeal from the district court's grant of Fedcap's motion to dismiss. The appellants brought the case pursuant to diversity jurisdiction, and the parties agree that the issues presented are issues of Maine law. Applying Maine law as set forth in Maine statutes, regulations, and the decisions of the Maine Law Court, we affirm the district court's ruling as it pertains to the appellants' claims that Fedcap violated its obligations under the ASPIRE-TANF and other programs. We have no need to and do not address whether appellants have a viable claim for monetary damages as to those claims. We vacate the district court's dismissal of Kiralis-Vernon's claim that a

- 3 -

Fedcap employee verbally assaulted her and remand for further proceedings on that claim.

## I.

## A.

TANF is a federal program that provides grants to participating states to fund programs that "provide[] assistance to needy families with (or expecting) children and provide[] parents with job preparation, work, and support services to enable them to leave the program and become self-sufficient." 42 U.S.C. § 602(a)(1)(A)(i). Maine established the ASPIRE-TANF program to "provide services and support to recipients of [TANF] and to reduce dependence on public assistance to the extent that adequate funding is available for that purpose." Me. Stat. tit. 22, § 3781-A(3). ASPIRE-TANF is administered by Maine's Department of Health and Human Services. Id. §§ 1-A(2), 3781-A(2). The Department is charged with "provid[ing] case management services to individuals participating in the ASPIRE-TANF program." Id. § 3782-A(1). Under the governing statute, an ASPIRE-TANF participant may receive support services depending on the results of a case manager's "initial assessment to determine that individual's education, training and employment needs based on available program resources, the participant's skills and aptitudes, the participant's need for supportive services, local employment opportunities," and other factors. Id. § 3788(3). A participant

is entitled to receive such services, but only "[t]o the extent that sufficient funds, training sites and employment opportunities are reasonably available." Id. § 3788(4-A).

"The [D]epartment may contract with public and private agencies and individuals to deliver employment, training and other services for [ASPIRE-TANF] participants consistent with the purposes of the program." Id. § 3782-A(2). The Department is required to monitor any such "contract agency at least annually to ensure compliance with [governing statutory provisions] to ensure compliance with the contracts entered into by the parties and to ensure that quality services are provided for program participants." Id. § 3782-A(3). The Department is further required to "adopt rules in accordance with [MAPA] by which satisfactory performance [of a contract agency] is measured." Id. Rules governing services under ASPIRE-TANF "apply equally to all participating [TANF] recipients, whether those services are provided by the [D]epartment or any other agency, organization or individual providing TANF program services to participants." Id. § 3786.

To receive TANF benefits, a participant must enter with a representative of the Department into a "family contract," which lists services the participant may receive, as well as the requirements with which the recipient must comply to avoid sanctions to their benefits. Id. §§ 3763(1)-(1-A), 3788(4-A).

When a participant enters into the ASPIRE-TANF program, the family contract is amended in accordance with statutory requirements. Id. § 3763(1). A participant may request an amendment to their family contract at any time. Id. § 3788(2).

As an alternative, under certain defined circumstances, ASPIRE-TANF participants may apply to participate in Maine's Parents as Scholars program instead of receiving TANF benefits. Id. § 3790(2). Parents as Scholars is a student financial aid program whose purpose is to "aid needy students who have dependent children and who are matriculating in postsecondary . . . education programs." Id. § 3790(1)-(2). Enrollees who are accepted into the program "must be provided with a package of student aid that includes aid for living expenses equivalent to that provided" under TANF. Id. § 3790(1). Similar to ASPIRE-TANF, an applicant's eligibility for the Parents as Scholars program depends upon an initial assessment by a Department case manager. Id. § 3790(2). Eligibility must be granted "[t]o the extent that program resources and space permit," and only if the assessment results in particular findings, such as that "the individual has the aptitude to successfully complete the proposed postsecondary program." Id. No more than 2,000 individuals may be enrolled in the Parents as Scholars program at a given time. Id. § 3790(1). "When there are fewer than 2,000 enrollees in the [program]," the Department is required to "inform all persons

- 6 -

applying for ASPIRE-TANF and all ASPIRE-TANF participants reviewing or requesting to amend their education, training or employment program under ASPIRE-TANF of the Parents as Scholars Program and shall offer them the opportunity to apply for the program." Id. § 3788(1-A).

Notice must be given of an ASPIRE-TANF participant's "right to request . . . a fair hearing." See id. § 3788(2); see also 10-144 Me. Code R. ch. 1, § 1 (providing that Department adjudicatory hearings "include proceedings whereby dissatisfied applicants, recipients, institutions, or other persons whose legal rights, duties, or privileges are at issue can obtain review of certain actions or inactions of the [Department] where such legal rights, duties or privileges are required by constitutional law or statute to be determined after an opportunity for hearing"). Such hearings are governed by MAPA. Me. Stat. tit. 22, § 3762(9)(B); Me. Stat. tit. 5, § 9051(1).

**B.**

Because this appeal follows a motion to dismiss, we recite the facts as alleged in the complaint. See Medina-Velázquez v. Hernández-Gregorat, 767 F.3d 103, 105 (1st Cir. 2014).

In 2016, the Department contracted with Fedcap to deliver employment, training, and other services to ASPIRE-TANF program participants. In its capacity as a contract agency, Fedcap had the authority to make final determinations as to the content

of program participants' family contract amendments, to request support service benefits from the Department on participants' behalf, and to request sanctions from the Department to reduce or terminate TANF benefits.

Subject to the Department's monitoring and other obligations, Fedcap also assumed responsibility for services which ASPIRE-TANF participants were to receive under Maine statutory law, agency rules, common law, and contract provisions. The appellants' complaint, which omits material references to certain limiting language as to the existence of Fedcap's and the Department's obligations, allege that Fedcap was required to:

- inform program participants of available education, employment, and training opportunities and support services, and how to request and receive them;

- assess program participants' education and training needs for attaining sustainable employment and provide necessary and available support services;

- inform program participants about their education, training, study, and work requirements under the ASPIRE-TANF program;

- provide program participants with an opportunity to apply for any education, employment, and training opportunity and/or support services available under the ASPIRE-TANF program;

- inform all program participants of Maine's Parents as Scholars program, and if there were fewer than 2,000 people enrolled in the program, offer program participants the opportunity to apply;

- assess and document program participants' barriers to participation, and offer participants with barriers to participation an opportunity for comprehensive assessment which could result in referral for alternative services, supports, and income benefits;

- engage in the interactive process as necessary for evaluating and responding to a request for reasonable accommodation;

- offer reasonable alternative participation requirements to program participants with disabilities or other good cause, and ensure that program participants with disabilities were given the right to request and receive a reasonable accommodation in order to receive substantially the same program benefits as persons without disabilities;

- ensure that program participants were not discriminated against on the basis of race, sex, or disabling condition;

- coordinate and authorize support services for program participants; and

- use commercially reasonable efforts to secure support services from the Department, notify the Department daily about support services to be issued on behalf of participants, request support services in a timely manner, and assist participants with collection of any required documentation needed for the Department to issue the support.

## C.

The complaint alleges that appellant Sara Halsey began participating in the ASPIRE-TANF program in 2016, at which time she was in substance use recovery and had a newborn daughter. In 2017, Halsey requested accommodation from Fedcap in recognition of her medical providers' recommendation that she delay seeking employment through ASPIRE-TANF because of health barriers related to her disabilities, including the need for stability in her recovery. The complaint alleges that Fedcap failed to engage in the interactive process necessary for evaluating and responding to Halsey's request and instead notified Halsey that within one week she would have to find a childcare provider for her daughter and begin applying daily for jobs at the Fedcap office or else receive sanctions as to her TANF benefits.

The complaint alleges Halsey informed Fedcap in 2019 that she had enrolled in a full-time graduate certificate program with the goal of obtaining a bachelor's degree, but that Fedcap did not in response inform her about, or give her an opportunity to apply to, the Parents as Scholars program or other support services. The complaint does not allege any facts as to whether at the time she informed Fedcap of the enrollment the Parents as Scholars program had fewer than 2,000 participants or any fact as to whether she would have been accepted had she been given an opportunity to apply. The complaint also does not allege any facts as to whether Halsey met the eligibility requirements for either the Parents as Scholars program or other support services at the time.

The complaint alleges that Fedcap at some unspecified later time informed Halsey about available support services, but it erroneously told her that she would have to work a part-time job to obtain support services for childcare while she was in school. As a result, Halsey worked a night shift while attending school full-time in order to receive childcare services. Halsey alleges that this prevented her from getting adequate sleep, caused her to spend long periods of time away from her daughter, and resulted in severe emotional distress.

Halsey alleges that, when Fedcap did provide her such support services for childcare, Fedcap failed to timely submit

requests to the Department so that her childcare costs could promptly be paid. She alleges that this caused her to fear for her daughter's wellbeing and her own ability to continue her education without reliable childcare. She further alleges that, as a result of Fedcap's failure to properly deliver services, she still has not completed her bachelor's degree.

The complaint alleges that appellant Susan Kiralis-Vernon began participating in the ASPIRE-TANF program in 2016, at which time she had a one-year-old daughter with special health needs and an eight-year-old son. In 2016, when Kiralis-Vernon informed Fedcap that she had enrolled in a bachelor's degree program, Fedcap allegedly did not inform her about, or give her an opportunity to apply to, the Parents as Scholars program or other support services for which she was eligible. As a result, the complaint alleges, Kiralis-Vernon struggled to afford school supplies and often could not access materials she needed from home. The complaint does not allege any facts as to whether the Parents as Scholars program had fewer than 2,000 participants at the relevant time, or any facts as to whether Kiralis-Vernon met the eligibility requirements for either the Parents as Scholars program or other support services at the time.

The complaint alleges that, when Fedcap did provide Kiralis-Vernon with support services for childcare, Fedcap failed to timely submit requests to the Department so that her childcare

costs could promptly be paid. This caused her to fear for her daughter's wellbeing and her own ability to continue her education without reliable childcare. The complaint further alleges that Fedcap informed Kiralis-Vernon of the Parents as Scholars program one year after she had enrolled in her bachelor's degree program. Kiralis-Vernon completed an application for the Parents as Scholars program, but Fedcap allegedly failed to submit the application to the Department. It is alleged that, as a result of Fedcap's failure to deliver services, Kiralis-Vernon still has not completed her bachelor's degree.

The complaint alleges that in 2019, Kiralis-Vernon was in the waiting room of a Fedcap office, and her children in the bathroom of said office, when a Fedcap employee verbally assaulted her for allegedly missing an appointment. Without provocation, the employee requested security and threatened to have the police remove Kiralis-Vernon, who is Black, from the premises while her children were still in the bathroom. The complaint alleges that the circumstantial evidence surrounding this incident demonstrates that the Fedcap employee's conduct was motivated at least in part by Kiralis-Vernon's race, color, or national origin.

## II.

In April 2022, Halsey and Kiralis-Vernon filed a complaint against Fedcap in the U.S. District Court for the District of Maine, asserting diversity jurisdiction. The

- 13 -

complaint was amended in July 2022. The complaint asserts Maine law claims of negligence, breach of contract, breach of fiduciary duty, negligent infliction of emotional distress, and intentional infliction of emotional distress. The bases of these claims are the allegations that Fedcap failed to provide the appellants with services it was obligated to supply. Specifically, they include allegations that Fedcap failed to engage in the interactive process, failed to properly process childcare payment requests, failed to submit a program application, and failed to inform or misinformed the appellants about the Parents as Scholars program and other services. The complaint also includes Kiralis-Vernon's allegation of discrimination based on race, color, or national origin. Accordingly, the complaint requests actual and punitive damages alleged to have arisen from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life. The complaint further alleges that Fedcap engaged in discrimination based on race, sex, and/or disability in ways that affected delivery of services, and which resulted in the appellants' suffering foreseeable damages arising from severe emotional distress.

In August 2022, Fedcap filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On March 15, 2023, the district court granted Fedcap's motion on the ground that "court review is not available

unless and until the Plaintiffs have tried to pursue a[n administrative] remedy before [the Department]." Halsey, 2023 WL 2529385, at *10.

The appellants timely appealed.

**III.**

**A.**

We review the district court's ruling in favor of the motion to dismiss de novo, "applying the same criteria that obtained in the court below." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992). In our review, we assume the veracity of the complaint's alleged facts, and make all reasonable inferences of fact in favor of the plaintiffs, Muratore v. Darr, 375 F.3d 140, 143 (1st Cir. 2004) (citing Doran v. Mass. Tpk. Auth., 348 F.3d 315, 318 (1st Cir. 2003)), but "[w]e do not credit . . . legal labels or conclusions, or statements that merely rehash elements of the cause of action," Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018) (citing Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)). We further are "not bound by the district court's reasoning but, rather, may affirm an order of dismissal on any ground evident from the record." MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014).

The appellants' complaint is exclusively grounded in the law of Maine, so we look to Maine law for the substantive rules of

- 15 -

decision. See N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 37 (1st Cir. 2001). A federal court considering state law claims does "not create new rules or significantly expand existing rules. We leave those tasks to the state courts." Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007). We are "bound by the teachings of [Maine's] highest court," N. Am. Specialty Ins. Co., 258 F.3d at 38, and "take care not to extend state law beyond its well-marked boundaries," CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 58 (1st Cir. 2020) (quoting Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir. 1996)). We presume that the appellants, in choosing a federal rather than a state forum, were cognizant that it is not the role of a federal court under diversity jurisdiction to blaze new trails in state law. See Jordan v. Hawker Dayton Corp., 62 F.3d 29, 32 (1st Cir. 1995).

## B.

The appellants contend that the district court's dismissal of their complaint was in error because, they assert, they are not required first to utilize the Department's administrative review process before bringing suit.

The district court's holding as articulated appears to have been grounded in Maine's exclusivity principle. See Halsey, 2023 WL 2529385, at *6, *9-10. But that principle applies only where there has been a final agency action which can be reviewed on appeal in accordance with statutory provisions whose procedures

- 16 -

have been deemed exclusive. See Fitanides v. Perry, 537 A.2d 1139, 1140-41 (Me. 1988); see also Paul v. Town of Liberty, 151 A.3d 924, 929 n.4 (Me. 2016). Because the appellants' claims do not yet involve a final agency action, reliance on the principle of exclusivity was misplaced.[1]

Nonetheless, "we are free to affirm an order of dismissal on any basis made apparent from the record." See Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013). To address the appellants' argument that the dismissal was in error, we turn to two separate but overlapping Maine doctrines: the principle of exhaustion of administrative remedies and the doctrine of primary jurisdiction. Both doctrines involve courts "impos[ing] upon themselves" limitations on the exercise of jurisdiction. Cushing v. Smith, 457 A.2d 816, 821 (Me. 1983); see State ex rel. Brennan v. R.D. Realty Corp., 349 A.2d 201, 207 (Me. 1975) (explaining that the doctrine of primary jurisdiction is "a matter of judicial policy"). Maine's exhaustion principle "requires a party to proceed in the administrative . . . arena until all possible administrative remedies are exhausted before initiating action in the courts." Cushing, 457 A.2d at 821 (quoting Levesque v. Inhabitants of Eliot, 448 A.2d 876, 878 (Me. 1982)). Maine's

---

[1] The district court found that there has been no final agency action by the Department at this time, and the appellee does not dispute this.

doctrine of primary jurisdiction "holds that as a general rule, the courts will not decide an issue which an administrative agency with jurisdiction over the matter has not yet considered." Levesque, 448 A.2d at 878. These doctrines "are both closely allied in basic function and concept." Brennan, 349 A.2d at 206. They each "rest[] on the premise that an agency has the primary authority to make certain decisions deemed relevant to the determination of the controversy." Bryant v. Town of Camden, 132 A.3d 1183, 1186-87 (Me. 2016) (quoting Brennan, 349 A.2d at 206).

Maine courts in enforcing these doctrines "recognize the advantages of leaving some preliminary determinations to the agencies which are particularly competent to handle them." Cushing, 457 A.2d at 821. By allowing "administrative agencies to correct their own errors, clarify their policies, and reconcile conflicts before resorting to judicial relief," Bryant, 132 A.3d at 1187 (quoting Ne. Occupational Exch., Inc. v. Bureau of Rehab., 473 A.2d 406, 409 (Me. 1984)), courts "avoid interference with the functions of an administrative agency," Cushing, 457 A.2d at 821.

In particular, these doctrines allow an agency which has jurisdiction an opportunity to make findings of fact. See Ne. Occupational Exch., Inc., 473 A.2d at 409. Such findings of fact by the agency "facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration, help parties plan their cases for

- 18 -

rehearings and judicial review, and keep agencies within their jurisdiction." Gashgai v. Bd. of Registration in Med., 390 A.2d 1080, 1085 (Me. 1978); see Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 62 (1st Cir. 2002) ("[T]he administrative process, at the very least, should facilitate the development of a useful record (and, thus, assist in the informed disposition of any subsequent litigation).").

The requirement to resort first to the administrative review process also allows the agency to "first decide issues peculiarly within its expertise before a court may review the agency's action." Annable v. Bd. of Env't Prot., 507 A.2d 592, 594 (Me. 1986). This recognizes that an agency "has developed an expertise in resolving the special problems with which it is, by law, required to become concerned." Churchill v. S.A.D. No. 49 Teachers Ass'n, 380 A.2d 186, 190 (Me. 1977) (quoting Brennan, 349 A.2d at 207). "[T]he '[m]erest prudence suggests that the courts ought to have the benefit of the . . . [Agency's] prior expert evaluation of controverted facts, before it intervenes in a controversy over which the . . . [Agency] has jurisdiction.'" Id. (alterations in original) (quoting Brennan, 349 A.2d at 207).

In addition, the doctrines promote judicial economy by allowing the agency, once it has found a violation, the opportunity to correct its own errors or to reverse any harms caused by its actions. See Ne. Occupational Exch., Inc., 473 A.2d at 409. This

potentially "avoid[s] the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency." Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir. 1984).[2]

Maine law recognizes limited exceptions that may relax the principle of exhaustion under special circumstances. See Lakes Env't Ass'n v. Naples, 486 A.2d 91, 96 (Me. 1984) (citing Ne. Occupational Exch., Inc., 473 A.3d at 410-11).

> [S]pecial circumstances may require a relaxation of the [exhaustion] rule . . . when "(1) 'the reviewing body has no power to grant the requested relief,' (2) the 'complaint alleges persuasive grounds for relief which are beyond the jurisdiction of the administrative agency to determine,' such that completing the process would be futile, or (3) 'only questions of law are involved' in the ultimate determination.

Bryant, 132 A.3d at 1187 n.1 (emphasis added) (citations omitted) (first quoting Stanton v. Trs. of St. Joseph's Coll., 233 A.2d 718, 724 (Me. 1967); then quoting Lakes Env't Ass'n, 486 A.2d at 96; then quoting Stanton, 233 A.2d at 724; and then quoting Lakes Env't Ass'n, 486 A.2d at 96); see Gross v. Sec'y of State, 562 A.2d 667, 672 (Me. 1989) (holding that plaintiffs' failure to

---

[2] This court has recognized the same benefits. See Barros v. Garland, 31 F.4th 51, 59 (1st Cir. 2022) (holding that allowing an agency "to take first crack at legal issues . . . afford[s] the parties the full benefit of the agency's expertise and allow[s] the agency the first opportunity to correct its own bevues" (second alteration in original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013))).

pursue administrative review process does not preclude judicial relief in part because there "is no provision within the administrative review process" that allows plaintiffs to bring their claims before the agency).  The Maine Law Court has suggested that these exceptions may also apply to the doctrine of primary jurisdiction in certain circumstances.  See Churchill, 380 A.2d at 190 ("There are exceptions to the doctrine of primary jurisdiction excusing the non-exhaustion of administrative remedies . . . .").

## C.

The appellants' claims -- excepting Kiralis-Vernon's race discrimination claim, which we address independently -- involve many disputed issues of fact and law that the Maine legislature has given the Department the responsibility to decide in the first instance and which require the Department's discretion and expertise to resolve.  We conclude that, under Maine's primary jurisdiction and exhaustion doctrines, these claims must be heard in the first instance by the Department.

The Maine legislature has vested in the Department express authority to ensure that contract agencies comply with their contractual and statutory obligations, and the responsibility to determine whether contract agencies meet said obligations satisfactorily.  See Me. Stat. tit. 22, § 3782-A(3).  The Maine legislature moreover has mandated that disputes as to a contract agency's actions shall first be heard and resolved in

administrative hearings before the Department.  See id. § 3788(2); Me. Stat. tit. 5, § 9051(1).  Such disputes are "clearly committed by statute to agency decision-making."  Johnston v. Me. Energy Recovery Co., Ltd. P'ship, 997 A.2d 741, 747 (Me. 2010).

Premature judicial review of Fedcap's actions would disrupt the Department's ability to carry out these statutory duties and would usurp the Department's authority to make factual and legal determinations necessary for the resolution of this case. See Johnson v. City of Augusta, 902 A.2d 855, 857 n.2 (Me. 2006) (stating that the primary jurisdiction doctrine "is applied to allow an agency charged with making a decision the opportunity to do so before a court disrupts the agency process"); McKart v. United States, 395 U.S. 185, 193 (1969) ("A primary purpose [of the exhaustion doctrine] is . . . the avoidance of premature interruption of the administrative process."); Kristin E. Hickman & Richard J. Pierce, Jr., Administrative Law Treatise § 17.2 (6th ed. 2019 & Supp. 2023) [hereinafter Hickman & Pierce] ("[A]llowing some parties to obtain court review without first exhausting administrative remedies may reduce the agency's effectiveness by encouraging others to circumvent its procedures and by rendering the agency's enforcement efforts more complicated and more expensive.").

The Department has been charged with administering the ASPIRE-TANF and Parents as Scholars programs, and it is accordingly

- 22 -

within the Department's authority to make findings about what actions Fedcap took with respect to the appellants' participation in both programs. See Me. Stat. tit. 22, § 3782-A(3) (providing that the Department "shall monitor each contract agency at least annually to ensure compliance" with relevant statutory and regulatory provisions). This includes findings as to whether and at what times Fedcap informed the appellants of the Parents as Scholars program and other services, whether such information provided was accurate, at what times Fedcap submitted applications and payment requests for the appellants to receive services under ASPIRE-TANF and Parents as Scholars, and whether Fedcap engaged in the interactive process for evaluating and responding to a request for reasonable accommodation. See Frazier, 276 F.3d at 62 ("[T]he administrative process, at the very least, should facilitate the development of a useful record . . . .").

The Department also must determine whether Fedcap in fact had the various obligations to appellants as claimed and whether Fedcap violated those obligations. Any such obligations are subject to statutory and discretionary determinations, which in turn involve disputed questions of fact and law that are the responsibility of the Department to resolve. See McGee v. United States, 402 U.S. 479, 490 (1971) ("When a claim . . . depends ultimately on the careful gathering and analysis of relevant facts, the interest in full airing of the facts within the administrative

- 23 -

system is prominent . . . ."). Such questions include whether Fedcap had obligations to inform Halsey and Kiralis-Vernon of the Parents as Scholars program and other services, whether Fedcap had obligations to provide them with opportunities to apply for said services, whether Fedcap was required to submit program applications and payment requests to the Department, whether any such applications or requests would have been accepted at the time, what benefits the appellants would have been eligible to receive had their applications been successful, whether Fedcap was required to engage in the interactive process, and what information Fedcap was required to provide to the appellants about the services for which they were eligible.

In particular, the extent of Fedcap's obligations under the Parents as Scholars program depends upon numerous determinations that require the Department to engage both in fact finding and legal and discretionary determinations. See Bar Harbor Banking & Tr. Co. v. Alexander, 411 A.2d 74, 77 (Me. 1980) (recognizing that the primary jurisdiction doctrine "express[es] a judicial policy of 'not [deciding] an issue concerning which an administrative agency has decision capacity until after the agency has considered the issue'" (second alteration in original) (quoting Brennan, 349 A.2d at 207)); see also Weinberger v. Bentex Pharms., Inc., 412 U.S. 645, 654 (1973) ("[I]n cases . . . requiring the exercise of administrative discretion, agencies

created by Congress for regulating the subject matter should not be passed over." (first alteration in original) (quoting Far E. Conf. v. United States, 342 U.S. 570, 574-75 (1952))). As the appellants admit, Fedcap's obligations under the Parents as Scholars program could be initially triggered only on a finding as to whether there were at the relevant time 2,000 people enrolled in that program. See Me. Stat. tit. 22, §§ 3762(12), 3790(1). Indeed, under the facts alleged in the complaint, it is possible that Fedcap promptly informed the appellants of the Parents as Scholars program once there were fewer than 2,000 enrollees.[3] The Department is responsible in the first instance for determining whether the timing of Fedcap's actions to inform the appellants of the program violated statutory and regulatory requirements.

Even if the Parents as Scholars program could accept applications during the relevant time, the eligibility of the appellants for the program, and hence whether the appellants could have received services under the program, depends on further factual determinations that require the Department's expertise to resolve. The Department must resolve these factual determinations in the first instance before a court can review the appellants'

---

[3] The complaint alleges that Fedcap informed Kiralis-Vernon of the Parents as Scholars program a year into her bachelor's degree program. The complaint also alleges that Halsey "was eventually informed about available support services," but does not make clear whether this included information about the Parents as Scholars program.

claims that Fedcap failed to inform them of the Parents as Scholars program and that Fedcap failed to submit Kiralis-Vernon's Parents as Scholars application to the Department. These factual questions extend well beyond whether 2,000 individuals were enrolled in the Parents as Scholars program. An ASPIRE-TANF participant is not inherently eligible to be enrolled in the Parents as Scholars program, but instead must satisfy statutory criteria that are within the discretion of the Department to determine. For example, the statute governing the program mandates that applications for the program be granted only "[t]o the extent that program resources and space permit." Me. Stat. tit. 22, § 3790(2). The statute additionally mandates that an individual may be enrolled in the program only after the Department has made various findings on the basis of an assessment of that individual, including:

> A. That the individual does not possess the necessary skills to obtain employment that will enable that individual to support a family at 85% of the median family income in the State for a family of the same size;
> B. That, considering potential employment opportunities and local labor market conditions, the postsecondary education sought by the individual will significantly improve the ability of the family to be self-supporting;
> C. That the individual has the aptitude to successfully complete the proposed postsecondary program; and
> D. That enrollment is for the pursuit of any degree or certification if the occupation has at least an average job outlook as identified by the Center for Workforce Research and Information within the Department of Labor.

> For occupations with a lower than average job outlook, educational plans require approval of the commissioner or the commissioner's designee.

Id. Maine law tasks the Department with carrying out the assessment necessary for resolving these factual questions. See id.; see also id. § 3788(3) (providing that the initial assessment shall be conducted by a Department case manager).

The appellants' claims related to ASPIRE-TANF services -- including that Fedcap misinformed them about requirements to receive services, failed to submit applications or payment requests, and failed to engage in the interactive process -- also depend upon determinations that the Maine legislature has vested the Department with making. The statute governing the ASPIRE-TANF program stipulates that the Department shall provide support services to a participant based on "available program resources, the participant's skills and aptitudes, the participant's need for supportive services, local employment opportunities," and other factors. See Me. Stat. tit. 22, § 3788(3), (4-A). The statute also assigns the Department the responsibility to first conduct the statutorily prescribed comprehensive assessments to determine whether the appellants were to be provided with "alternative services, supports and income benefits" on account of Halsey's disabilities and the health needs of Kiralis-Vernon's child. See id. § 3788(3-A).

The appellants' claims -- excepting the race discrimination claim -- cannot be adjudicated without determining first whether the appellants were eligible for services under ASPIRE-TANF and Parents as Scholars during the relevant time, and if so, for which services the appellants were eligible. Assessment of the applicants' eligibility falls squarely within the Department's regulatory authority, and so must be addressed by the Department in the first instance, and the case should not proceed in court without the Department first exercising its discretion over this matter. See Town of Shapleigh v. Shikles, 427 A.2d 460, 466, 466 n.3 (Me. 1981) (holding that superior court did not abuse its discretion in denying plaintiff injunctive relief because, given "experience and expertise of zoning board officials," "where zoning problems involve matters of fact, their initial determination should be made at the administrative level, rather than by the judiciary"); see also McKart, 395 U.S. at 194 ("[S]ince agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise."); Hickman & Pierce § 17.2 ("[J]udicial review of agency action can be hindered by failure to exhaust administrative remedies because the agency may not have an adequate opportunity to assemble and to analyze relevant facts and to explain the basis for its action.").

That the Department first hear these matters would serve judicial economy by narrowing the issues available for review. The Department has been assigned the responsibility to determine whether Fedcap engaged in any violation of its obligations to either appellant. See Munsell v. Dep't of Agric., 509 F.3d 572, 591 (D.C. Cir. 2007) ("Bringing such claims to the agency in the first instance allows the agency to clarify its position about the conduct of the accused official."). If Fedcap violated its duties, the Department is given the first responsibility to correct any errors in its oversight of Fedcap and to determine what remedies are available through the administrative review process, if any. See Ne. Occupational Exch., Inc., 473 A.2d at 409. The Department first "must be given an opportunity to act in its regulatory role" before the appellants may seek redress in the courts. Marshall v. Town of Dexter, 125 A.3d 1141, 1148 (Me. 2015); see Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 178 (1st Cir. 2016) (holding that requiring administrative review in first instance is beneficial for judicial review in part because outcome of administrative review process "may reconfigure the contours of the controversy by the time it is ripe for district court consideration").

**D.**

Under both the governing statute and Department regulations, it is clear that the appellants' claims -- excepting

again Kiralis-Vernon's race discrimination claim -- may be addressed in administrative hearings before the Department. The appellants argue otherwise and maintain that an ASPIRE-TANF participant may request a hearing only to appeal an agency decision. The appellants contend that, because Fedcap's various alleged unlawful actions cannot be characterized as agency decisions, the administrative review process does not provide an opportunity for the Department to address any of their claims, and so exhaustion requirements do not apply.

This argument is refuted by the governing statute and Department regulations. The Maine statute does not impose any express limitation on a program participant's right to request a fair hearing before the Department. See Me. Stat. tit. 22, § 3788(2) (stating that a participant in the ASPIRE-TANF program must be informed of their "right to request a conciliation meeting and a fair hearing" when they receive written copies of family contract amendments).

Likewise, Department regulations provide for administrative review of the appellants' claims. Under the regulations governing TANF benefits and the Parents as Scholars program, an individual who is signed onto a family contract with the Department "has an opportunity for a fair hearing when [he or she] disagrees with actions affecting their benefits." 10-144 Me. Code R. ch. 331, Ch. VI. This same regulatory chapter includes

language indicating that "benefits" refers broadly to TANF payments, Parents as Scholars support, and ASPIRE-TANF support services. See id.; see also Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 57 (1st Cir. 2008) ("Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction."); State v. Dubois Livestock, Inc., 174 A.3d 308, 311 (Me. 2017) (holding that, when interpreting statutory language, "we examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language" (quoting Dickau v. Vt. Mut. Ins. Co., 107 A.3d 621, 628 (Me. 2014))). The language of this regulatory provision plainly encompasses Fedcap's alleged misstatements to the appellants about the requirements governing ASPIRE-TANF participation, as such misstatements would affect appellants' receipt of benefits.

The administrative review process established by Department regulations additionally covers Fedcap's various alleged failures to comply with its obligations, including its failure to inform the appellants about the Parents as Scholars program and ASPIRE-TANF services, its failure to respond to the appellants' requests for reasonable accommodations, and its failure to timely submit applications to the Department.[4]

---

[4] The regulations also would allow the appellants to request a hearing before the Department on the Department's failure

- 31 -

Regulations governing the Emergency Assistance program, which are found in the same regulatory manual as the regulations governing TANF and Parents as Scholars, state that any "person aggrieved by a decision, act, <u>failure to act</u> or delay in action concerning [an emergency assistance application] shall have the right to a [hearing]." 10-144 Me. Code R. ch. 331, Ch. VIII (emphasis added). The regulations go on to state that "[t]he same policy and procedure used in the TANF and [Parents as Scholars] programs applies to Emergency Assistance with regard to hearings." <u>Id.</u> As we interpret the regulations to make them harmonious, the opportunity for a fair hearing extends, were there any question about it, to failures to act.[5] <u>See</u> <u>McCuin</u> v. <u>Sec'y of Health & Hum. Servs.</u>, 817 F.2d 161, 168 (1st Cir. 1987) ("In interpreting . . . regulations, courts must try to give them a harmonious, comprehensive meaning, giving effect, when possible, to all provisions.").[6]

to ensure that Fedcap complied with its obligations. <u>See</u> Me. Stat. tit. 22, § 3782-A(3).

[5] In this, Maine law parallels federal law. <u>See</u> <u>Goethel</u> v. <u>United States Dep't of Com.</u>, 854 F.3d 106, 116 (1st Cir. 2017) ("Agency 'action' for purposes of administrative law generally 'includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" (quoting 5 U.S.C. § 551(13))).

[6] As the district court properly concluded, the Department may waive the thirty-day time limit on requesting a hearing. <u>See</u> <u>Halsey</u>, 2023 WL 2529385, at *8, *8 n.7; 10-144 Me. Code R. ch. 331, Ch. VI. Given that the complaint as read most favorably to the appellants indicates that Halsey and Kiralis-

**E.**

We reject the appellants' argument that, even if these claims first could be addressed by the Department, exhaustion and primary jurisdiction requirements do not apply because the Department is unable to grant monetary damages as to these claims.[7] Even assuming arguendo in the appellants' favor that the alleged violations would as a statutory matter give rise to monetary relief, and that the appellants fall within the category of those eligible for such relief, their claims are still subject to

Vernon could not have known about any action or inaction by Fedcap as to its failure to inform them about the Parents as Scholars program, it is far from clear that this time limit applies. If, however, the Department nonetheless applies this time limit and finds their claims as to Fedcap's failure to inform about the Parents as Scholars program to be untimely, then we note that nothing in this opinion would prevent the appellants from arguing their claims are timely. See Maine Rule of Civil Procedure 15(c) (providing when "[a]n amendment of a pleading relates back to the date of the original pleading"); Frame v. Millinocket Reg'l Hosp., 82 A.3d 137, 142-43 (Me. 2013) (describing that Maine Rule of Civil Procedure 15(c) allows for "[a]n amended pleading [to] relate[] back to the date of the original pleading where the claim asserted in the amended pleading 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading'"); AFSCME Council 93 v. Me. Labor Rels. Bd., 678 A.2d 591, 592 (Me. 1996) (holding that "an amended complaint may . . . relate back to the filing date of the original complaint" even when "the original complaint must be dismissed"); Fed. R. Civ. P. 15(c) ("Relation Back of Amendments").

[7] The district court found that the Department could compensate the appellants through the provision of services retroactive to the time when the appellants first became eligible for benefits. Halsey, 2023 WL 2529385, at *8. The appellants contest this. We do not address this issue.

exhaustion requirements. While an agency's inability to grant the precise relief sought is one factor that weighs in favor of judicial review in the first instance, see Churchill, 380 A.2d at 190, we conclude that this factor alone is not sufficient in this case to establish that exhaustion and primary jurisdiction requirements do not apply.[8]

We first address the appellants' argument as it pertains to their claims that Fedcap failed to engage in the interactive process necessary to evaluate Halsey's request for accommodation, failed to timely submit Halsey's and Kiralis-Vernon's requests for childcare payments to the Department, and failed to submit Kiralis-Vernon's Parents as Scholars application to the Department. The Maine Law Court's decision in Marshall requires us to hold that, even assuming the Department's inability to provide monetary relief, that does not excuse the appellants from exhaustion and primary jurisdiction requirements on these claims.

---

[8]    The district court noted that procedures provided in Maine Rule of Civil Procedure 80C would allow the appellants to join an independent claim seeking damages to a claim seeking review of Department actions. See Halsey, 2023 WL 2529385, at *9; see also Fleming v. Comm'r, Dep't of Corr., 795 A.2d 692, 695 (Me. 2002) ("[Me. R. Civ. P.] 80C anticipates that a plaintiff (or petitioner) may add an independent claim for damages . . . ."). We note that these Rule 80C procedures, which govern judicial review of final agency actions, are not relevant to the exhaustion analysis. Under the principle of exhaustion, the court inquires whether "a remedy before an administrative agency" is available, and not whether an adequate remedy would be made available upon judicial review of agency action. See Stanton, 233 A.2d at 723-24.

Among other reasons, the Department could have prevented or limited damages associated with these claims had the appellants brought these claims to the Department's attention at an earlier time.

In Marshall, the plaintiff filed a complaint in superior court against a town and its code enforcement officer, alleging constitutional violations and seeking relief in the form of a permanent injunction and damages. See 125 A.3d at 1145. The plaintiff alleged in particular that the town's code enforcement officer had improperly issued a notice of violation that prohibited repair and maintenance work on his property, which had "potentially expos[ed] [the plaintiff's property] to accelerated deterioration due to exposure to the elements." See id. at 1144-45 (first alteration in original). The superior court granted the town's motion to dismiss on the ground that the plaintiff had failed to first seek review of the officer's actions through the town's Board of Appeals. See id. at 1145, 1149. The Law Court affirmed, holding that resort in the first instance to the administrative process was required because the Board of Appeals was vested with the authority to address each of the plaintiff's claims. See id. at 1147-48. The court rejected the plaintiff's argument that, because the Board could not grant the monetary relief sought, he did not have to pursue an administrative remedy. See id. at 1147. Although the Board could not provide the precise relief sought by the plaintiff, the court reasoned that, had the plaintiff used the

available administrative process when he had received the notice of violation, that "process could have resulted in a prompt decision on the [officer's actions] and could have limited or prevented any monetary damages while also eliminating the need for a judicially created injunction."  Id. at 1148.

In light of Marshall, the unavailability of monetary relief does not excuse exhaustion requirements where the alleged damages resulted at least in part from the appellants' "cho[ice] to bypass [the administrative] process and proceed directly to court."  See id. at 1148.  Here, the Department could have prevented or limited any monetary damages had the appellants requested an administrative hearing following Fedcap's failure to engage in the interactive process, request childcare payments, or submit Kiralis-Vernon's Parents as Scholars application.[9]  Such hearings would have afforded the Department an opportunity to determine whether Fedcap was providing "quality services . . . for program participants" in accordance with its legal obligations. See Me. Stat. tit. 22, § 3782-A(3).  Moreover, the appellants at these hearings could have requested that the Department order Fedcap to comply with any unfulfilled obligations.  See 10-144 Me.

---

[9]    Indeed, while the appellants argue that, "as a practical matter, [they] could not have requested an administrative hearing to address Fedcap's failure to provide necessary information about the ASPIRE program, because [they] did not learn about that information," they do not make an analogous argument about these other claims.

Code R. ch. 331, Ch. VI (stating that following a hearing request the Department must provide the ASPIRE-TANF recipient with adequate opportunity to "advance any arguments without undue interference").

The appellants argue they could not have been aware, and so could not have requested a hearing before the Department to address, that Fedcap had failed to inform them of the Parents as Scholars program and other support services or that Fedcap had misinformed Halsey about the requirements to remain eligible for such services, assuming they were eligible. It is true that the Maine Law Court has indicated that, at least in some circumstances, an agency's inability to "grant the requested relief" may warrant an exception to the exhaustion principle. See Lakes Env't Ass'n, 486 A.2d at 96; Gross, 562 A.2d at 672 (holding that exhaustion principle does not apply in part because "the remedy provided by the review procedure" is not what is "requested by the plaintiffs in their amended complaint").

Nonetheless, we conclude that the doctrine of primary jurisdiction, apart from the exhaustion principle, requires that the appellants seek administrative review of these failure-to-inform claims in the first instance. The Law Court has made clear that the exhaustion principle is not coterminous with the primary jurisdiction doctrine. See Brennan, 349 A.2d at 206 ("We recognize that the 'doctrine of primary jurisdiction' is

somewhat different from the 'doctrine of exhaustion of administrative remedies' . . . ."); Town of Levant v. Seymour, 855 A.2d 1159, 1164 (Me. 2004) (addressing the plaintiff's arguments under the doctrine of primary jurisdiction after determining that the plaintiff's arguments under the principle of exhaustion are waived). If the primary jurisdiction doctrine were to apply only when an adequate administrative remedy is available, that doctrine would be rendered redundant with the exhaustion principle. Further, while one of the underlying purposes of the exhaustion principle -- to protect judicial economy by "avoiding the necessity of any judicial involvement," Andrade, 729 F.2d at 1484 -- is potentially undermined when the administrative review process cannot provide the relief the plaintiff seeks, this is less so for the primary jurisdiction doctrine, which is primarily motivated by a need for the agency's expertise to resolve the issues involved, see Brennan, 349 A.2d at 207. Moreover, the Law Court has used language indicating that application of exceptions under the primary jurisdiction doctrine is discretionary, and so is not subject to a rigid formula. See Town of Levant, 855 A.2d at 1164 (holding that, because the administrative board does not have exclusive jurisdiction over the matter and because the board, unlike the district court, "does not have . . . the ability to issue an injunction and impose a penalty[,] . . . . the district court was not required, on the grounds of primary jurisdiction, to

wait until the administrative appeal was finally concluded before it could proceed with the enforcement action" (emphasis added)).

There is no Maine caselaw stating that the unavailability of sought-after monetary relief, in the absence of other circumstances, is a sufficient reason to exempt a plaintiff from primary jurisdiction requirements. The Law Court has stated, in the context of a discussion about the primary jurisdiction doctrine, that "where the administrative agency is not empowered to grant the relief sought and it would be futile to complete the administrative appeal process, such are special circumstances dispensing with the exhaustion of the administrative remedy prior to turning to the courts for relief." Churchill, 380 A.2d at 190 (emphasis added). The court has not held that the unavailability of the sought-after relief alone can constitute such a special circumstance. See id.; cf. Stanton, 233 A.2d at 724-25 (noting that the relevant law was beyond the agency's power and any relief the agency could provide would have been insufficient); Ne. Occupational Exch., Inc., 473 A.2d at 411 ("Judicial review may be undertaken despite a failure to exhaust all administrative remedies where the questions involved are ones only of law, or where the administrative agency is not empowered to grant the relief requested and, therefore, completion of the appeal process would be futile." (internal citations omitted)).

The facts here counsel against allowing the appellants' failure-to-inform claims to move forward in federal court. As we have discussed, these claims depend upon many determinations committed by law to the Department and that require the Department's expertise to resolve. See Brennan, 349 A.2d at 207 (holding that agency "expertise [is] the controlling consideration" in "rationaliz[ing] the application of" the primary jurisdiction doctrine). The appellants allege that Fedcap not only failed to inform the appellants of the Parents as Scholars program, but also of "all other support services for which [they were] eligible while pursuing education." Determination of such eligibility requires that the Department conduct assessments of the appellants and their particular circumstances. See Me. Stat. tit. 22, § 3788(3). Further, even if the Department were to make a determination that Fedcap had violated its obligations to inform the appellants of the Parents as Scholars program or any other services, that would then lead to other questions of fact and law. These would include the extent to which those violations caused the appellants to miss out on benefits and services under the ASPIRE-TANF and Parents as Scholars programs. These determinations necessarily depend upon factual and legal findings yet to be made which are assigned to the Department, including whether the appellants would have been eligible for enrollment in the Parents as Scholars program had they successfully submitted

applications. See id. § 3790(2); Bryant, 132 A.3d at 1186 (holding that the doctrine of primary jurisdiction requires courts to "avoid ruling, on appeal, on matters committed by law to the decision-making authority of an administrative agency before the administrative agency has first had an opportunity to review and decide the facts on the merits of the matter at issue." (quoting Christian Fellowship & Renewal Ctr. v. Town of Limington, 896 A.2d 287, 298 (Me. 2006))).

We conclude that the appellants are not excused from the requirement to first seek administrative review of their claims that Fedcap failed to properly inform them about the Parents as Scholars program and other services, failed to engage in the interactive process, failed to submit Kiralis-Vernon's Parents as Scholars application, and failed to process childcare payment requests.

## F.

This leaves the allegation that Kiralis-Vernon was verbally assaulted by a Fedcap employee on the basis of her race, color, or national origin. Kiralis-Vernon alleges that she experienced severe emotional distress as a result of the alleged verbal assault and seeks compensatory and punitive damages for negligent and intentional infliction of emotional distress.

We conclude that neither Maine's principle of exhaustion nor its doctrine of primary jurisdiction applies to this

- 41 -

independent race discrimination claim. Neither the statutes nor the regulations grant the Department jurisdiction or authority over such claim, nor does the Department have special expertise. The law governing the race discrimination claim is outside of the Department's expertise and knowledge, and this claim does not involve the same subordinate statutory legal questions as the other claims included in the amended complaint the dismissal of which we have affirmed. Unlike the other claims, the race discrimination claim differs in kind from the issues of whether the appellants were eligible for ASPIRE-TANF or other services, the extent to which the appellants received such services from Fedcap, and Fedcap's obligations under the ASPIRE-TANF program.[10]

---

[10] Our conclusion is consonant with application of the primary jurisdiction doctrine in a federal context. In Tassy v. Brunswick Hosp. Ctr., Inc., a medical doctor's privileges were revoked by a hospital following sexual harassment allegations. See 296 F.3d 65, 65-66 (2d Cir. 2002). The doctor "denie[d] the sexual harassment allegations and assert[ed] that [he was] discriminated against . . . on the basis of his race and national origin." Id. at 66. The court held that the doctor was not required under the primary jurisdiction doctrine to first bring his claim before the New York Public Health Council, an administrative body whose "primary function . . . is to determine whether there is a medical justification for the withdrawal of [a] doctor's privileges." See id. at 66, 69 (alteration in original) (quoting Johnson v. Nyack Hosp., 964 F.2d 116, 121 (2d Cir. 1992)). The court reasoned that "[t]he primary factual issue is whether [the doctor] committed the alleged sexual harassment, the resolution of which does not require the [Public Health Council's] expertise." Id. at 70. The court noted that the Council "has no expertise in determining whether a doctor committed sexual harassment or other acts of non-medical misconduct." Id. The court further noted that Tassy could be distinguished from a previous decision in which the court had held that the Council did

- 42 -

We reject the appellee's several arguments to the contrary.  The appellee contends that the race discrimination claim falls under the Department's authority to hear an appeal of any action which deprived program participants of services.  However, although the amended complaint includes language alleging that the Fedcap employee's verbal assault affected the delivery of services, the brunt of the claim is that it was an act of discrimination, forbidden under the law, which resulted in severe emotional distress.  The appellee does not explain under what authority the Department could determine whether the Fedcap employee's alleged conduct, if true, was motivated by race and caused the infliction of compensable emotional distress.  See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06 (1976) (holding that primary jurisdiction doctrine does not apply because "[t]he standards to be applied in [the] action . . . are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the case").

The appellee also argues that it has a defense which could fall within the Department's expertise: that the alleged

---

have primary jurisdiction over a claim involving the revocation of medical privileges.  See id.  Revocation in that case had been on the basis of unsatisfactory surgical performance, and so "[t]he medical expertise of the [Council]" was required to determine whether "defendants had a proper medical reason to terminate [the doctor's] privileges."  Id. (quoting Johnson, 964 F.2d at 122).

- 43 -

verbal assault involved an accusation that Kiralis-Vernon missed an appointment, which is a sanctionable act. See 10-144 Me. Code R. ch. 607, § 4(V)(B)(2) (stating that "[f]ailure or refusal to keep additional appointments required by ASPIRE-TANF" constitutes a "sanctionable act"). But even if Kiralis-Vernon missed an appointment, that would not address the issue of whether racial bias motivated how she was treated. If the appellee means by its argument that it could engage in racial discrimination in sanctioning a recipient late for a meeting, we see no basis for that, nor does the appellee cite any law in support.

We also reject the appellee's argument that, even if the Department could not address the race discrimination claim in a hearing, an informal process was available through which the appellants "might have resolved their issues without resort to a full hearing, and thus avoided the emotional distress and monetary damages they allege here." The appellee refers in particular to a regulatory provision stating that

> [ASPIRE-TANF] [r]ecipients who are dissatisfied with any action will upon request be given the opportunity to discuss their case with the immediate supervisor. The assistance group will be advised that this meeting with the supervisor is optional and will not delay or replace the fair hearing. The basis for this meeting will be a review of the case situation to determine any available resolution of the problem.

10-144 Me. Code R. ch. 331, Ch. VI. The district court held that "[t]his informal procedure would allow [the Department] to hear and address claims of abusive and discriminatory treatment, such as those made by . . . Kiralis-Vernon." Halsey, 2023 WL 2529385, at *8 n.6. Under Maine law, even were this accurate, we do not think the Law Court would require the claim of racial discrimination, different in kind, to fall within the authority and jurisdiction of the Department.[11]

## IV.

We vacate the dismissal of the appellants' verbal assault claim and remand for further proceedings consistent with this opinion. We affirm the dismissal of the appellants' other claims. No costs are awarded.

---

[11] We do not address the appellee's alternative arguments that the appellants' claims should be dismissed under Rule 12(b)(6). These arguments were not addressed by the district court, and so they may be addressed on remand.